# CHRISTENSEN et al. v. HAMILTON REALTY COMPANY et al.

## No. 2420.   Decided December 28, 1912 (129 Pac. 412).

1. PRINCIPAL AND SURETY—BUILDING CONTRACTOR'S BOND—VALIDITY. A building contractor's bond was not unenforceable because it mentioned only the husband as obligee, though the building contract was signed by both husband and wife as owners, or because it incorrectly stated the contract price. (Page 78.)

2. PRINCIPAL AND SURETY—BUILDING CONTRACTOR'S BOND—DESCRIPTION OF CONTRACT—SUFFICIENCY. Nor was it necessary that such bond mention both husband and wife in order to identify the building contract, where the place where the house was to be erected was described in both contract and bond, and the date of the contract was given in both. (Page 80.)

3. PRINCIPAL AND SURETY—BUILDING CONTRACTOR'S BOND—LIABILITY OF SURETY. Where differences which arose between a building contractor and owner were submitted to an architect, who found that the building was not according to specifications, and it was thereupon, at his suggestion, agreed between the contractor and owner, with the consent of the trust company, which was surety on the contractor's bond, that the contractor should erect a retaining wall as compensation for the breach of his contract, the trust company was not by this supplementary agreement released from its suretyship obligation. (Page 80.)

4. PRINCIPAL AND SURETY—ALTERATION OF CONTRACT—RELEASE OF SURETY. The rule that any material alteration in the terms of the original contract releases the sureties applies only after the terms of the obligation are ascertained.[1] (Page 81.)

5. PRINCIPAL AND SURETY—ALTERATION OF CONTRACT—CONSENT OF SURETY. The surety on a building contractor's bond may consent to a modification of the building contract, or may ratify the modification as in the case of other contracts. (Page 81.)

6. PRINCIPAL AND SURETY—ACTION ON BUILDING CONTRACTOR'S BOND—EVIDENCE. In an action on a building contractor's bond, evidence of correspondence between the owner and his attorney on one side, and of the bonding company through its president on the other, and other material evidence, was admissible upon the issue of whether the bonding company had consented to. an agreement in compromise of a breach of the building contract. (Page 82.)

---

[1] Daly v. Old, 35 Utah, 82, 99 Pac. 460, 28 L. R. A. (N. S.) 463; Smith v. Bowman, 32 Utah, 38, 88 Pac. 687, 9 L. R. A. (N. S.) 889.

7. CONTRACTS—BUILDING CONTRACT—BREACH OF COMPROMISE AGREEMENT—LIABILITY OF CONTRACTOR. Where a building contractor and the owner entered into a compromise agreement whereby the contractor was to build a retaining wall as compensation for breach of his original contract, and he subsequently refused to comply with such agreement, the owner could rescind the same and sue for a breach of the original contract. (Page 84.)

8. PRINCIPAL AND SURETY—BUILDING CONTRACTOR'S BOND—BREACH OF COMPROMISE AGREEMENT—LIABILITY OF SURETY. Where the company which made such contractor's bond consented to the compromise agreement and subsequently approved its repudiation by the contractor, it could likewise be held for breach of the original contract. (Page 84.)

9. CORPORATIONS—OFFICERS—POWERS. Where the president of a surety company consented to a special compromise agreement whereby a contractor, for which it was surety, agreed to build a retaining wall as compensation for a breach of the building contract, the corporation was bound thereby; a corporation being bound by the acts of its agent within the corporate powers and the apparent scope of the agent's authority.[2] (Page 86.)

10. CONTRACTS—BREACH OF BUILDING CONTRACT—WAIVER BY TAKING POSSESSION. Where an owner went into possession of his house, built on his own land, under protest that it was not completed by the contractor and in reliance upon a compromise agreement that a retaining wall should be constructed by the contractor in lieu of defects in the building, he did not thereby waive his right to claim damages for the defects upon the contractor's refusal to build the retaining wall, though the original contract provided that occupancy by the owner should be conclusive evidence of performance of the contract; there being no waiver by occupancy where the owner has no clear choice between accepting and rejecting the work. (Page 86.)

11. APPEAL AND ERROR—PROCEEDINGS ON REMAND—NONSUIT. Where, in an action for breach of a building contract against the building contractor and the trust company which made his bond, the trust company files a separate answer in which it sets up its own defenses, both negative and affirmative, and judgment, is rendered against the contractor, but the trust company's motion for nonsuit, interposed at the close of plaintiff's case, is improperly sustained, the trust company is entitled on remand of the case as against it to present its evidence upon the issue of facts presented by its answer. (Page 88.)

---

[2] Loftis v. Insurance Co., 38 Utah, 532, 114 Pac. 134.

APPEAL from District Court, Third District; *Hon. M. L. Ritchie,* Judge.

Action by John A. Christensen and another against the Hamilton Realty Company and the Salt Lake Security and Trust Company.

Judgment dismissing complaint against Salt Lake Security and Trust Company.

Plaintiffs appeal.

REVERSED AND REMANDED FOR NEW TRIAL AS AGAINST THE TRUST COMPANY.

*C. S. Patterson* for appellants.

*Dey & Hoppaugh, Edward McGurrin* and *W. E. Rydalch* for respondents.

FRICK, C. J.

This was an action to recover damages for an alleged breach of a building contract, and upon a surety bond. The contractor and surety are parties to the action. For convenience the respondent Hamilton Realty Company will hereafter be called the contractor, and the other respondent, Salt Lake Security & Trust Company, will be designated trust company. The appellants in their complaint, after alleging that they are husband and wife and the corporate existence of respondents, in substance alleged that they entered into a contract with the contractor aforesaid, which is dated on the 23d day of June, 1909, wherein said contractor covenanted and agreed to furnish all the materials and perform all the labor necessary to erect and complete a certain dwelling house (except the plumbing therein) in accordance with certain plans, specifications, and drawings, which were made a part of the contract aforesaid, and to do the work "in a good, substantial, and workmanlike manner;" that it was also agreed that all the materials used should "be fit, proper, and

sufficient for the completion of said building;" that said dwelling and all work connected therewith should be furnished and completed, "provided that possession of the premises be given to the contractor on or before September 15, 1909;" that, in case the contractor should furnish the materials and perform the labor and should complete the said building as aforesaid, appellants agreed to pay it the sum of $3000 therefor; that it was further agreed that "the occupancy of said building by said party of the second part (appellants), his tenants, heirs, or assigns, shall be conclusive evidence of the performance of this contract against any claim of the owner and an acceptance of the same." It was also alleged that the trust company executed and delivered a surety bond, which is also set forth in the complaint, the material parts of which are, that the contractor, as principal, and the trust company, as surety, are "held and firmly bound unto John A. Christensen in the sum of $1500" upon the condition that said contractor "has entered into a contract with the said John A. Christensen for the building of a house . . . according to plans and specifications agreed upon and signed by all of said parties for the sum of $3300; said agreement for building being dated June 23, 1909." It is further provided in said bond that, if said contractor "shall well and faithfully perform all of the covenants and agreements by it to be performed in said agreement, . . . then this obligation to be void, otherwise to remain in full force and effect." The place where said dwelling should be erected is also specifically stated both in the contract and in the surety bond. Appellants further alleged that they had performed their part of the building contract, but averred that the contractor had failed to do so, and then proceed to set forth in detail wherein the contractor had failed and refused to comply with the terms of the contract, and damages in that regard are fully specified. It was also alleged that the dwelling house was not completed within the time specified, and that, by reason thereof, appellants were damaged. Appellants demanded judgment against both the respondents for the amount claimed by them.

The contractor answered the complaint admitting the relationship of appellants and the capacity of respondents, admitted that it had entered into the agreement set forth in the complaint and that the trust company had executed the surety bond, and denied all other allegations of the complaint. As an affirmative defense, the condition contained in the contract with respect to the occupancy by appellants of the dwelling house and the effect thereof were pleaded, and it was averred that appellants, long before bringing the action, went into and remained in actual possession of said dwelling.

The trust company also filed an answer in which it made the same admissions that the contractor made in its answer, except that it had executed the bond, and denied all other allegations of the complaint. As an affirmative defense it also pleaded the condition in the contract respecting the effect of the occupancy of the dwelling by appellants, and that they for a long time had been and were in actual occupancy thereof. The trust company also averred that, pending the construction of said dwelling, the appellants and the contractor had entered into a "supplemental article of agreement" in which it was agreed that certain matters of difference had arisen and existed between appellants and the contractor with respect to whether the contractor was complying with the terms and conditions of his contract in the erection of said dwelling, and that said differences were submitted to one Fred. A. Hale, an architect, to pass upon and determine. It was further alleged on information and belief that said appellants and the contractor accepted the decision of said architect, and that said dwelling was thereafter completed "in accordance with the terms of said agreement and the decision of said Fred. A. Hale." The supplemental agreement aforesaid was set forth in full in its answer, but it was not averred that said agreement was not entered into with the consent of the trust company, or that by reason thereof the terms of the original agreement were materially changed or departed from. That matter was left to inference from an inspection of the agreements.

Appellants filed a reply in which they admitted that the supplemental agreement was entered into, and fully explained the reasons for the same, and averred that the same was entered into "with the consent and by the procurement" of the trust company. Appellants in said reply further explained why and under what circumstances they went into possession of said dwelling; that both said contractor and said trust company, before bringing this action, had repudiated the compromise agreement and the terms and conditions imposed on them thereunder by said Fred. A. Hale, the architect mentioned therein. Appellants averred that, for the reasons aforesaid, they relied on the terms of the original agreement.

Upon the trial of the issues it was made to appear without dispute that the contractor had in many material matters failed and refused to comply with the terms of its contract, and had failed to comply with the plans and specifications both as to the furnishing of material and doing the work; that the appellant John A. Christensen, the owner of the building, protested against the further progress of the work unless the terms of the contract were complied with; that he notified the trust company through Mr. F. E. McGurrin, who signed the surety bond as its president; that, after the matter had been discussed, said supplemental agreement was drawn up, and pursuant thereto said McGurrin, Mr. Hamilton, representing the contractor, John A. Christensen, the owner, and Mr. Patterson, his attorney, and Mr. Fred. A. Hale, the architect mentioned in said supplemental agreement, went to the dwelling house then in process of construction to inspect it for the purpose of complying with the terms of said supplemental agreement. The architect then pointed out and discussed a number of defects in the building and departures from the plans and specifications. Such defects were found in the walls, in the setting of the window and door frames and in other respects. No specific agreement with respect to what should be done was reached, however, at the time, but a short time thereafter Mr. Hale, the architect, suggested to the interested parties,

including the trust company, that in view that the walls of
the house were substantially completed, and for that reason
to remedy some of the defects therein, they would have to
be taken down at great expense, and, in view that it was
necessary to construct a retaining wall along one side of the
lot upon which the dwelling was erected in order to com-
pensate the owner thereof for the defects pointed out in the
erection of the house, the contractor should erect the retain-
ing wall aforesaid, and the owner, Mr. Christensen, should
furnish the material therefor.   According to the evidence
on the part of the appellants, this offer was accepted by all
the parties, including the trust company, and the house was
thereafter completed by the contractor.   In doing so he was
compelled to tear down and rebuild some of the flues in
order to make them comply with the specifications.   It was
also made to appear that, before entering into the building
contract, John A. Christensen, one of the appellants, nego-
tiated a loan of $3300 from the trust company, and to evi-
dence the same he and his wife Selma executed and delivered
their promissory notes for said sum, and to secure the pay-
ment thereof also executed and delivered a mortgage to
said company, which was a first lien upon the property on
which the dwelling was erected.

It seems that the dwelling house was to be erected at a
cost of $3300, including the plumbing, but that the con-
tractor agreed to construct the dwelling without the plumb-
ing for the sum of $3000; the plumbing to be paid out of
the remaining $300 so far as that amount would pay for
the same, and the balance, if any, should be paid personally
by the owner.   It seems that for this reason the sum of
$3300 is mentioned in the bond, while in the contract the
amount is stated to be $3000.   It was further made to ap-
pear that the whole transactions relating to the loan, the
building contract, and bond were all consummated in the
office of the trust company, and that all the papers relating
thereto were prepared and executed there.   The trust com-
pany was thus mortgagee furnishing the money for the erec-
tion of the building, as well as surety for the contractor.

It was also shown that the money loaned was not paid to Christensen, but was left with the trust company, and was by it paid for labor and materials as the work progressed upon orders issued by Mr. Christensen. In that way no money was paid except for work and materials which actually was performed on or entered into the building. In the manner aforesaid, the whole contract price was paid long before this action was commenced. Appellants also proved that the building was not completed until about ten months after it should have been under the terms of the contract; that after paying out the money as aforesaid, and after notifying the trust company, they went into possession and made demand on both the contractor and the trust company that the retaining wall be constructed, which was refused. There was also produced in evidence the correspondence between the trust company and appellants with respect to the acts and conduct of the contractor and its failure to comply with the terms of the building contract, to which we shall again refer hereafter. After proving the damages by the architect and other witnesses, the appellants rested their case.

The trust company then interposed a motion for nonsuit upon substantially the following grounds: (1) That the contract sued on was not the contract for which the trust company became surety, as appears from an inspection of said contract and bond; (2) that the terms of the original contract were changed, modified, and rescinded by the supplemental agreement heretofore referred to; (3) that the terms and conditions of the supplemental agreement materially changed and modified the original agreement, and that such changes and modifications were acted on by the parties, and therefore appellants cannot rescind the supplemental agreement; (4) that, if appellants may rescind the supplemental agreement as contended for by them, they nevertheless cannot recover on the original contract because they have taken possession of the dwelling house, and therefore have conclusively waived all right to sue the contractor for any defects that may exist in such dwelling; (5) that, in taking possession of said dwelling, appellants have

waived all rights to compensation for any violations of the original agreement relating to defective work and materials, and that there is no evidence to support any claim for damages for delay in completing said house within the time specified in the original agreement; (6) that the supplemental agreement and the duties imposed thereunder upon the contractor created additional and increased liabilities upon both the contractor and the trust company, and that there is no evidence that the trust company or any of its officers authorized so to do consented to any change or modification of such original agreement. Wherefore it is contended the trust company is released from all liability upon the bond aforesaid. The district court sustained the motion for nonsuit, but upon what ground it is not made to appear, and entered judgment dismissing the case as against the trust company.

The case against the contractor was submitted to the jury upon the evidence, and they found a verdict in favor of appellants as follows:

"For defective construction, $217; for damages for delay in completion, $224."

Judgment was duly entered upon the verdict, and no one is here complaining of that judgment. The appellants, however, appeal from the judgment in favor of the trust company dismissing the action as against it. Appellants assign a large number of errors why the court erred in sustaining the motion for a nonsuit, but we think our decision will be understood better by referring to the reasons advanced by the respondent trust company why its motion for a nonsuit was properly sustained.

It is asserted that the surety bond is not enforceable, because it appears from the recitals therein that it was not given as security for the faithful performance of the building contract introduced in evidence: (1) Because in the bond only John A. Christensen is named as obligee while the building contract is made with and is signed by both John A. and Selma Christensen; and (2)

because in the bond the contract price for the erection of the dwelling is stated to be $3300, while in the contract it is stated to be $3000 only. These objections, in view of the whole transaction and the evidence, seem to us wholly without merit. The only question raised by the objections we have set forth is one of identity and not, as counsel argue, one of different contracts or parties. It was not necessary to state the contract price in the bond, nor was it necessary to name all the beneficiaries for whose benefit the bond was given. In 1 Brandt on Suretyship and Guaranty, sec. 32, the author says:

"A bond may be good as a common law obligation, though no person be named therein as obligee. The naming of an obligee is the merest formality possible, so that if the instrument failed to name one, the substance of the undertaking would remain."

It is quite true that an obligee is necessary—that is, some person must be designated, either expressly or by necessary implication, who may enforce the bond for the benefit of those for whom it is made—but it is not true that it is necessary to name all· the beneficiaries for whose benefit a bond is given in order to make it valid and enforceable. (*Leach v. Flemming*, 85 N. C. 447.) That this is so is very frequently illustrated in bonds to secure the faithful performance of building contracts where, in such bonds, a particular obligee is named, yet the bond is given for the benefit of all who may furnish materials or perform labor upon the building. (*Board of Education v. Grant*, 107 Mich. 151. 64 N. W. 1050.) In the case at bar Selma Christensen signed the building contract as the wife of John A. Christensen, and in that way became merely a nominal party thereto. But she nevertheless was interested in the home as the wife of Mr. Christensen, and as such was a beneficiary under the contract, and, since she is made a party to the action, no one can complain.

We cannot see, however, why it was necessary to name her in the bond except as identifying the bond as the one which was given to secure the faithful performance of the

contract. The bond was, however, abundantly identified by other means. For example, the precise place where the house was to be erected is described in both the contract and the bond, and the date of the contract is given in both. Indeed, the courts hold that the contract and the bond must be treated as one instrument, whether they refer to each other or not. The cases cited by counsel have not the remotest bearing upon the question involved here. The cases cited all relate either to the question that an obligee is necessary or to a change of principals in the original contract and who are named in the bond after the same had been executed and delivered. The question in this case is one purely of identity; that is, whether the bond introduced in evidence is the bond that was in fact given to secure the performance of the contract which was sued on. We think the question is one that does not even admit of a possible doubt, to say nothing of a reasonable doubt. If, therefore, the court sustained the motion for nonsuit upon this ground, it was error.

It is further argued that, by entering into what is called the supplemental agreement with respect to the differences that had arisen between Mr. Christensen, the owner of the dwelling, and the contractor, the terms of the original contract were "modified, abrogated, and rescinded," and for that reason the bond was released. So far as the so-called supplemental agreement is concerned, there is absolutely nothing in its terms or provisions which in any way modifies, abrogates, or rescinds any matter or thing contained in the original contract or in the plans and specifications. All that was sought by the owner of the dwelling in entering into the supplemental agreement was to have the contractor comply with, rather than to alter, change, or depart from, any of the provisions of the original contract or the plans or specifications. Indeed, what was sought by the owner of the dwelling was to have the contractor observe and comply with the terms of the building contract and not to modify, abrogate, or rescind them. But it is contended that by subsequently adopting the sugges-

tions of the architect, who was appointed in the supplemental agreement to determine whether the terms of the contract and the plans and specifications were being followed or not, as a compromise and settlement of the damages to which the owner of the dwelling was entitled by reason of the failure of the contractor to follow the plans and specifications and to comply with the terms of the contract, it should erect a certain retaining wall for the owner that additional burdens were cast upon the bond, by reason of which it was released.

In this connection the doctrine is invoked that sureties are favorites of the law, and that they have the right to insist that they be bound only in accordance with the strict letter of their contract, and that, in case the parties to the contract make any material change, alteration, or any material departure from the terms of the original contract in executing it, the sureties are released from their obligations. The rule is well stated by Mr. Justice Straup in *Smith v. Bowman,* 32 Utah, 38, 88 Pac. 687, 9 L. R. A. (N. S.) 889, and is approved in *Daly v. Old,* 35 Utah, 82, 99 Pac. 460, 28 L. R. A. (N. S.) 463. It is, however, also pointed out in *Daly v. Old, supra,* that the doctrine applies only after the terms and conditions of the obligation are ascertained, and that, in ascertaining the obligations assumed by the surety in his contract, the same rules of construction are applied as in the construction of other contracts. (See, also, 1 Brandt on Suretyship and Guaranty, sec. 103, and *Henricus v. Englert,* 17 N. Y. Supp. 235, 237.[3])

Again the surety may consent to any change or modification of the original contract after the execution of both the contract and bond, or may ratify such change or modification when made under precisely the same circumstances and conditions that changes or modifications

---

[3] Reported in full in the New York Supplement; reported as a memorandum decision without opinion in 63 Hun, 625.

of other contracts may be consented to or ratified by those. who are bound by the provisions thereof, and such consent or ratification may be proved in the same manner as consent and ratification may ordinarily be proved. All this is elementary.

By considering the correspondence that passed between the owner of the dwelling and his attorney on one side and the trust company through its president upon the other, in connection with the other evidence adduced at the trial, all of which was proper (*Wills v. Ross,* 77 Ind. 1-13, 40 Am. Rep. 279) upon the subject of consent, we think the evidence is quite sufficient to withstand a motion for nonsuit, to say the least. The correspondence aforesaid discloses that, as soon as the owner of the dwelling, in his own mind at least, became satisfied that the contractor was not complying with the plans and specifications either in furnishing the quality of materials or in performing the work as specified, he at once wrote to the trust company setting forth in detail in what particulars the contractor failed to comply with the terms of his contract and the plans and specifications. The trust company, through its president, responded, and he expressed a willingness to go with the attorney, the architect, and the owner to make an inspection of the building for the express purpose of determining whether the complaints of the owner were well founded or not. The president of the trust company, the contractor, the owner and his attorney, and the architect then went to the building, and the architect there and then pointed out specifically wherein and to what extent the contrator had failed to comply with the plans and specifications and with the terms of his contract. Neither the president of the trust company nor the contractor, so far as the evidence discloses, at any time dissented from or questioned the correctness of the decision of the architect. Many of the defects, however, could be remedied only by tearing down the entire walls of the building, which were then almost completed. It was for this reason that nothing specific was done or agreed to at the meeting held at the building. The

architect, however, afterwards thought out the plan of permitting the work to proceed; but, in order to compensate the owner of the building, to some extent at least, for the depreciation in value of his building because of its defective construction, the architect suggested that the contractor construct the retaining wall referred to. The architect says he submitted the proposition to both the contractor and the president of the trust company, and, after they had consented, he then submitted it to the owner of the building, and he likewise consented to the proposition. The contractor was thus permitted to proceed with the building, and all that the owner insisted upon thereafter was that the plans and specifications be complied with in completing the building. The building was accordingly completed, but not at the time agreed upon but nearly ten months thereafter. The owner ordered the trust company to pay the contractor as the building progressed. This no doubt was done in reliance upon its promise to erect the retaining wall. In that way the whole contract price for the building was paid, and, when the building was completed, the owner notified the trust company that the retaining wall was not constructed, that the building was not completed within the time specified, that he insisted that the wall be completed, and that he be paid damages for the time that he was deprived of the use of the building. Upon this question the president of the trust company seems to have been the only one with whom the whole correspondence was carried on. He was fully apprised of all the facts and he, as appears from the correspondence, even took the matter up with the contractor, and, when the contractor repudiated the compromise agreement with respect to the retaining wall and refused to construct the same, the president as appears from his last letter, ended the controversy in the following words:

"As bondsman for the contractor, this company does not feel like taking any further part in the matter."

It was after the foregoing transactions that the appellants brought this action, which is based on the breaches of the building contract.

The trust company vigorously contends that the appellants may not rescind the compromise agreement with regard to the erection of the retaining wall, but must rely upon that agreement if they have any remedy at all. It further insists that, by entering into that agreement, the parties to the building contract added new terms **7, 8** and conditions thereto, by reason of which it is released from liability upon the surety bond. As we have seen, however, the trust company consented to whatever change was made, and hence is bound thereby. Moreover, the trust company also clearly approved the repudiation by the contractor of the compromise agreement to construct the retaining wall. From all this it follows that, if the appellants may sue the contractor upon the original contract for the alleged breaches thereof, they may likewise sue the trust company upon the surety bond. We think the facts of this case bring it clearly within the doctrine that where a compromise agreement is entered into between parties to an existing contract whereby one of the parties agrees to do or to perform certain things as compensation for some breach of said contract, and the party so agreeing subsequently refuses to comply with the compromise agreement or abandons the same, the other may at his option either sue on the compromise agreement or may rescind the same and sue for the breaches of the original contract. The doctrine is tersely stated in 8 Cyc. 535, in the following words:

"Upon a breach of the terms of a compromise agreement or abandonment by one party thereto, the other party may treat the agreement as a nullity and be remitted to his original claim or cause of action."

Upon the question that appellants could have based an action upon the compromise agreement, it is said:

"The right to be remitted to his original cause of action is for the benefit of the other party to the compromise, and he may, if he so desire, waive the breach and proceed upon the compromise."

(See, also, *Clews v. Rielly,* 6 N. Y. Supp. 640,[4] and
*Thomson v. Heidenheimer,* 16 Tex. Civ. App. 114, 40 S.
W. 425.) It is further said in Cyc. that, before a party
can rely and insist upon the compromise agreement, he must
show either a performance of the condition imposed by such
agreement or show some valid excuse for nonperformance
of the imposed condition. In the case at bar the compromise
agreement, to which the trust company was in effect a party,
is relied on by it after it had expressly approved its repu-
diation by the contractor. The wisdom and justice of the
foregoing rule is well illustrated by the facts in this case.

As the evidence now stands, the undisputed facts are that
the contractor was permitted to proceed with the comple-
tion of his contract upon the express agreement that the re-
taining wall should be erected as part compensation, at least
to the owner of the building for defective construction; that
the contract price was paid to the contractor in reliance
upon that agreement; and that the owner finally entered
into possession of the dwelling, and in doing so apparently
waived all claim for damages except for delay in completing
the building, and that the wall be constructed. After the
contract price was paid, however, the contractor repudiated
the compromise agreement, refused to comply with the terms
thereof, and the trust company in effect approved its repu-
diation. Under such circumstances the owner of the build-
ing may well say, "I now elect to stand upon the terms of
the original agreement and shall insist upon my rights there-
under, whatever they may be." If the contractor and the
trust company may now say that appellants are not bound
by the compromise agreement, then, as we view it, they may
take advantage of their own wrong. We are clearly of the
opinion that, under the evidence as it now stands, the trust
company must be held to have consented to both the terms of
the compromise agreement and the abandonment or repudia-
tion thereof by the contractor. It therefore cannot take ad-

4. Reported in full in the New York Supplement; reported as
a memorandum decision without opinion in 53 Hun, 636.

vantage of any change of the original contract that might have been effected by the compromise agreement, and it is also bound by the election of appellants to sue upon the original contract.

The contention that no authority is shown in the president to consent to the changes aforesaid is not tenable. Corporations, like individuals, are bound by the acts of their agents which are within the powers of the corporation and within the apparent scope of the agent's authority. In the case at bar it may be assumed that the principal officer of the corporation, *prima facie* at least, had the power to waive or to consent to a change or modification of certain provisions in a contract which related to matters coming within the corporate powers and which he had the authority to enter into, and with respect to which he, in all stages of the business, apparently represented and acted for the corporation. Moreover, the question of the president's authority is, we think, settled against respondents' contention by what is said by this court in *Loftis v. Insurance Co.*, 38 Utah, 532, 114 Pac. 134. (See, also, Thompson on Corporations (2 Ed.), sec. 1690.)

It is also stated in the motion for nonsuit that, under the terms of the original agreement, appellants have waived all their rights to claim damages for defective construction by reason of their going into occupancy of the building. As heretofore stated, the letter of the contract is to that effect. The contract must, however, receive a reasonable construction, and the terms thereof should be applied to normal, and not to abnormal, conditions. The appellant John A. Christensen constantly protested that the contract was being violated. He finally went into possession of his own house under protest that it was not completed and in reliance upon the compromise agreement that the retaining wall would be constructed in lieu of correcting the defects in the building itself. This is made to appear from the correspondence and from his conduct, as the same is disclosed from the evidence. If the owner, by taking possession and protecting his own property, under the cir-

cumstances disclosed by this record, loses all rights against a contractor for failure to comply with his contract, a new method has been discovered by which a building contractor may escape liability for contractual breaches. Moreover, the provisions in the contract referred to, in our judgment, were not placed therein for the purpose of having them apply to cases where there is an actual dispute between the contractor and the owner of the building when possession is taken by the owner while protesting that the building has not been completed in accordance with the contract. To so rule would be to hold that it was intended by the parties that the owner could remain out of possession indefinitely and could recover from the contractor damages for the loss of rent or use of the dwelling while he remained out of possession. A provision in a building contract which, under all the circumstances, would make the taking of possession by the owner of his own property conclusive evidence that he had waived all defects in cases where the contractor insists that the building is completed according to the terms of the contract, and the owner contends to the contrary, would, in our judgment, be void as being wholly unreasonable. Before it can be held that an owner waives his rights by going into possession of his own house, he must have a clear choice between accepting and rejecting the work as done. The owners of buildings have no such choice where the building is erected on their own ground. Hence the mere act of going into possession cannot be made conclusive evidence of waiver. (3 Page on Contracts, sec. 1497.)

The question of whether appellants may or may not recover damages from the trust company for delay in completing the building for the full period of time that it remained uncompleted, when it should have been completed as provided in the contract, is a question that we cannot determine at this time. All we can say is that, as the evidence now stands, a finding of liability for the whole period of time would be justified.

In conclusion, counsel for appellants insists that we should reverse the judgment in favor of the trust company and re-

mand the case to the district court, with directions to that court to enter judgment against said company for the amount of damages found against the contractor, as hereinbefore stated. This contention is no doubt based upon the theory that, where the surety is made a party with the contractor in an action for a breach of the original contract, the surety is bound by any judgment that may be obtained in such action for damages for a breach of such contract. Ordinarily the law is to that effect. In the case at bar, however, the surety filed a separate answer in which it set up its own defenses, negative as well as affirmative. When the case was tried, the whole case, as against the trust company, was determined upon questions of law arising upon the motion for nonsuit. That company, therefore, never had an opportunity to present its evidence upon the issues of fact presented by its answer. While that company may not again insist that the questions of law raised by the motion aforesaid and herein determined adversely to its contention are legal defenses to the action, it may nevertheless show, if it can, that the facts upon which our conclusions of law are based are not as, for the purposes of the motion for nonsuit, it concedes them to be, and as we of necessity have assumed them to be. The trust company is also entitled to be heard upon all questions of fact and to have either the court or the jury pass upon the effect to be given to its evidence upon any material or relevant issue. So far as the judgment against the contractor is concerned, it must stand affirmed.

The judgment of dismissal entered in favor of the trust company is reversed, and as to said company the cause is remanded to the district court, with directions to grant appellants a new trial and to proceed with the case in accordance with the views herein expressed. Appellants to recover costs on appeal.

McCARTY and STRAUP, JJ., concur.