# JOHN M. HANNULA v. DULUTH & IRON RANGE RAILROAD COMPANY.[1]

June 11, 1915.

Nos. 19,162—(131).

**Challenge for implied bias.**

1. Under G. S. 1913, § 9233 (R. L. 1905, § 5391, subd. 2), making the relation of master and servant between the defendant and the plaintiff a cause of challenge for implied bias, it is not a good cause of challenge to a proposed juror that he is in the employ of a corporation, the majority of the stock of which is controlled by another corporation, and so on down to a final holding corporation, which holding corporation in the same way controls the majority of the stock of the defendant corporation; such holding corporation not owning stock in either, and neither owning stock in the other.

**Same — finding of trial court final.**

2. Under G. S. 1913, § 9232 (R. L. 1905, § 5390), the finding of the court that a proposed juror, situated as described in paragraph 1, was not subject to challenge for actual bias *held* final.

**Wilful negligence.**

3. The court did not err in withdrawing from the jury the charge of wilful negligence.

**Evidence — release.**

4. The evidence was such as to justify a verdict that the defendant was not negligent, and that a release made by the plaintiff's father, the plaintiff being a minor, was fairly and understandingly made.

**Contributory negligence.**

5. The court did not err in submitting to the jury the question whether the plaintiff, injured when he was five years and three and one-half months old, was guilty of contributory negligence.

**Parent and child — settlement for personal injury.**

6. Under G. S. 1913, § 7681 (R. L. 1905, § 4060), prior to the amendment made by Laws 1907, c. 58, a father could settle for an injury to his child without suit brought.

[1] Reported in 153 N. W. 250.

Note.—As to the right of a parent, guardian or next friend to compromise infant's cause of action for personal injuries, see note in 21 L.R.A.(N.S.) 338.

Action in the district court for St. Louis county to recover $30,-000 for personal injury caused by the negligence of defendant's servants. The case was tried before Fesler, J., and a jury which returned a verdict in favor of defendant. From an order denying his motion for a new trial, plaintiff appealed. Affirmed.

*J. W. Reynolds,* for appellant.

*Abbott, MacPherran, Lewis & Gilbert,* for respondent.

DIBELL, C.

Action to recover damages sustained by John M. Hannula, an infant, who was run over by an engine of the defendant; verdict for the defendant; plaintiff appeals from the order denying his motion for a new trial.

The boy, John Hannula, was injured on November 14, 1902. He was born on July 29, 1897, and at the time of his injury was five years and three and one half months old. On February 6, 1903, something like three months after the accident, the plaintiff's father settled with the defendant, receiving $100 for himself and $600 for the boy. This action was commenced in February, 1914, eleven years and three months after the accident, and was tried in June, 1914, some eleven years and seven months after the accident.

The assignments will be considered as near as may be in the order in which they are presented.

1. Three jurors, employees of the Oliver Iron Mining Co., were challenged for implied bias. The ground of the challenge was that they stood in the relation of master and servant to the defendant Iron Range company. G. S. 1913, § 9232 (R. L. 1905, § 5390). The challenges were disallowed and error is alleged in their disallowance.

The Oliver company is a Minnesota corporation. It owns no stock in the Iron Range company and the Iron Range owns no stock in the Oliver. A majority of the stock of the Oliver is controlled by another corporation, a majority of whose stock is likewise controlled by another corporation, and so on to a last corporation, the majority of whose stock is controlled by the United States Steel Corporation. In a similar way a majority of the stock of the Iron Range is con-

trolled by another corporation, a majority of whose stock is controlled by another, and so on down to a last corporation the majority of whose stock is controlled by the steel company. The steel company owns no stock in either the Oliver or the Iron Range and has such indirect control as is indicated. It is clear enough that the statute gives no ground of implied bias by reason of the facts stated; that is, from the facts stated it cannot be said that the relation of master and servant exists between the three men, employed by the Oliver company, and the defendant Iron Range company. Whether the statute should so provide is not for us. It does not. The ruling of the court was right.

2. The same jurors were challenged for actual bias. The court found the challenge not true. Error is claimed in this. The cause for a challenge for actual bias is as follows:

"For the existence of a state of mind on the part of the juror, in reference to the case or to either party, which satisfies the triers, in the exercise of a sound discretion, that he cannot try the issue impartially and without prejudice to the substantial rights of the party challenging, and known as actual bias." G. S. 1913, § 9232, subd. 2 (R. L. 1905, § 5390, subd. 2).

The three jurors called testified with positiveness that the fact that they were employed by the Oliver company would not prevent them giving a fair consideration to the case against the Iron Range or returning a verdict upon the evidence. They were subjected to cross-examination. Additional evidence was taken. The company by which they were employed sustained the relation to the defendant company which we have stated. Each of the companies has the same legal department, and the same claim department, and they office in the same building. There are naturally mutual acquaintanceships, and a general feeling of friendliness between the employees of each. The court, after consideration of the evidence, was of the opinion that the jurors could try the issues impartially and without prejudice to the substantial rights of the plaintiff. The challenge was upon the ground stated and the test was that defined by the statute. Upon a challenge upon the ground of actual bias the finding of the trial court is final. State v. Feldman, 80 Minn. 314, 83 N. W. 182; Perry v. Miller, 61 Minn. 412, 63 N. W. 1040; Hawkins v. Manston, 57

Minn. 323, 59 N. W. 309. Every one connected with jury trials knows that the plaintiff in one case, or the defendant in another, may have jurors presented who, because of local surroundings and local connections, seem to him disqualified fairly to try the issues. Sometimes it happens, too, that one side or the other thinks he does not have a fair jury, unless it is largely composed of those whose natural prejudices are with him. To get impartial and unprejudiced jurors, in the various situations which arise, the statute puts upon the trial court the burden of determining whether proposed jurors are impartial and without prejudice between the litigants. In cases such as the one here presented a court should act with extreme caution, and with a careful appreciation of the peculiar situation of the defendant and the employers of the jurors. We doubt not the trial court did. None of the three jurors participated in the trial.

3. The complaint charges wilful negligence of the defendant. At the close of the testimony the court excluded this issue from the jury. Upon this error is based.

Substantially the only evidence at all bearing upon this issue is the testimony of the injured boy, who says that he was standing on the foot-board of the tank end of the pusher engine; that one of the trainmen helped couple a nearby engine to its train; that he came back to the engine, passing close to him; and that he then got upon the engine and it started in the backward movement. This happened on November 14, 1902, when the boy was five years three and one-half months old. His testimony to the event was given eleven years and seven months later. His testimony was improbable in the extreme, was without support on the vital point, and was directly denied by the trainmen. The testimony of this boy, so young at the time, given so many years later, in narrating an improbable story, was inherently so weak that the court was justified in refusing to submit the ground of wilful negligence to the jury.

4. The negligence charged against the defendant is that it allowed the boys to ride upon its pusher engine, stationed at Embarrass, going about and upon it whenever they pleased, and negligently started the engine when the boy was in a place of peril. The plaintiff cannot complain of a verdict for the defendant on the question of its

negligence. The case against it upon the issue of negligence, if the evidence made any at all, was weak.

On February 6, 1903, just a few months after the accident, the boy's father and mother went to the defendant, and, after some negotiation, a release of the father's cause of action and of the boy's cause of action was made. The father received $100. The boy received $600. This sum was entirely inadequate, if the boy had a cause of action at all. Nothing more was done or said until some eight or nine years later. The action was commenced by the boy's guardian *ad litem,* who, some little time prior to its commencement, was interested in gathering up a number of claims for fire injuries against the same defendant. All charges of fraud or misrepresentation were denied by the defendant. There was no actual fraud. The most that can at all be claimed is that the plaintiff did not understand. The case was properly submitted to the jury; and there can be no real claim that the verdict of the jury upon the question of the validity of the release is not sustained by the evidence.

5. The court left it to the jury to determine whether the boy was himself guilty of negligence which contributed to his injury. It is claimed that the boy was *non sui juris* and that the submission of the question of his contributory negligence was error. In Decker v. Itasca Paper Co. 111 Minn. 439, 127 N. W. 183, the court, in an opinion written by Mr. Justice Brown, the present Chief Justice, held that the boy there concerned, who was five years and three months of age at the time of his injury, was as a matter of law not chargeable with negligence. The court did not adopt nor reject the rule sometimes held that a child under the age of seven years, and therefore by express law incapable of committing crime, could not be held guilty of contributory negligence. Its conclusion was that the question was one not free of doubt, and that there was merit in both the arbitrary determination by age and the one which made mental capacity the test. The court in the case at bar left it to the jury to say whether the boy was of such capacity that he could be charged with contributory negligence and in doing so used this language:

"It appears that the boy was five or six years of age. You will of

course take that into consideration in determining whether he was negligent. A child of such tender years as to be incapable of exercising any judgment or discretion cannot be charged with contributory negligence. But, where a child has attained such an age as to be capable of exercising his judgment and discretion, he is responsible for the exercise of such a degree of care and vigilance as might reasonably be expected of one of his age and mental capacity. Of course, the plaintiff in 1902 did not have the judgment or discretion of an adult. He has testified as to what he remembers he did on the day of the accident before the accident happened. He has testified as to a remark Elmer Lamppi made to him as he was about to get on the foot-board of the tender, and the answer he made. He has testified to some things he saw and some observations he made shortly before the accident. You should take all these things into consideration, all the evidence in the case on the question and determine for yourself how much judgment and discretion the boy had on that day, or was capable of exercising. And, if you determine he was then capable of exercising any judgment or discretion, hold him responsible for the exercise of such degree of care and vigilance as might reasonably be expected of one of his age and mental capacity."

This was a cautious and fair presentation if the question of the negligence of the boy was one to be determined on the basis of mental capacity. A majority of the court are of the opinion that the trial court was right in leaving the question of contributory negligence to the jury. The boy, if some of the testimony be true, knew how the train was to move out, debated where he would ride, and insisted upon riding the foot-board instead of the cowcatcher, though warned of the danger, and was capable, to some extent, of exercising judgment, care and discretion.

6. The plaintiff claims that the father had no legal right to make a settlement of his cause of action. By R. L. 1905, § 4060 (G. S. 1913, § 7681), a father is given the right to maintain an action for the injury of a minor child. The statute further provides that if no such action be brought by the father or mother an action may be maintained by a guardian ad litem. This statute has been sustained against constitutional objection by treating the father substantially as

a statutory trustee.   Lathrop v. Schutte, 61 Minn. 196, 63 N. W.
493 ; Hess v. Adamant Mnfg. Co. 66 Minn. 79, 68 N. W. 774.

In many cases the right of the father to settle without suit brought
has been passed without a suggestion of lack of authority.   In John-
son v. Minneapolis & St. L. R. Co. 101 Minn. 396, 112 N. W. 534,
the trial court instructed the jury that the father had the right to
settle his son's claim before suit brought.   On appeal this court stated,
after a consideration of the question and the citation of authorities,
that the instruction was correct.   This case is clouded by a sugges-
tion in the later case of Picciano v. Duluth, M. & N. Ry. Co. 102
Minn. 21, 112 N. W. 885, that it was assumed in the Johnson case
that the parent had the right to settle.   An examination of the John-
son case shows that a holding such as was stated in the opinion was
unnecessary, for the jury found that the settlement made by the
father did not include his son's claim.   In the Picciano case it is
further suggested that a settlement by the father without the approval
of the court is not necessarily void ; and the court states that it knows
no reason why such a settlement may not be made, and this brings it
back to the holding in the Johnson case.   In the Picciano case the
question of fraud was involved.   The point now being considered re-
lates to the authority of the father to settle, not to a question of fraud.
We are content to hold that the father could settle without suit
brought, and without the approval of the court, adopting the reason-
ing of the Johnson case.   It is understood that we are not speaking
of the effect of the amendment made by Laws 1907, p. 68, c. 58.

Several questions have been raised which do not merit detailed
discussion.   Some of the witnesses testifying as to the release testi-
fied to matters which were clearly enough conclusions.   The same is
true of some testimony upon the part of the plaintiff upon the same
general issue.   While there may have been error in these, it is not
of a character calling for a new trial.

There is a claim that at the time of the boy's injury his father,
having seen the injury, signaled the trainmen as the train was ap-
proaching him.   That something of this kind was done is without
question.   The court declined to submit any feature of it to the jury.
We are unable to see that there was anything in the situation demand-
ing it.

We have gone over the case thoroughly and we see nothing of which the plaintiff can make just complaint. Giving to the plaintiff the most favorable interpretation of the facts there was never much in his case. It was tried eleven and one-half years after the accident, on testimony which, had it been fresh, would have been inherently weak, and in face of a release made more than eleven years before, and which had been unchallenged for most of that period. The case is now stale.

Order affirmed.