[Civil No. 3577.   Filed November 25, 1935.]

[52 Pac. (2d) 479.]

ROSA PACHECO, by MOLLIE HUDGINS, Guardian Ad Litem, Appellant, v. ANGEL DELGARDO, Appellee.

Mr. Paul J. Feehan, for Appellant.

Messrs. Struckmeyer & Jennings, for Appellee.

LOCKWOOD, C. J.—This is an appeal by Rosa Pacheco, hereinafter called plaintiff, by her guardian *ad litem,* Mollie Hudgins, from a judgment sustaining a plea in bar in an action brought by her against Angel Delgardo, hereinafter called defendant.

The facts necessary for a decision of the appeal are not disputed, and may be stated as follows: Plaintiff

on the first day of April, 1932, was a minor of the age of 17 years. She was born in Mexico, but came to this country at the age of 10, and had finished the third grade in our public schools, so that her knowledge of English was sufficient to enable her to testify in that language; but she was entirely ignorant of legal procedure. On the day first mentioned, while en route from Laveen to Phoenix in an automobile driven by defendant, an accident occurred, which resulted in serious injury to the plaintiff, and she was taken to a hospital, where she was found to be suffering from a broken right leg, a broken right hip, and other minor injuries. On June 3d, one Chester Martin, who, the record shows, was a stranger to plaintiff, visited her in the hospital while she was suffering great pain, and in some manner procured her signature to a petition that he be appointed her guardian *ad litem* for the purpose of suit against defendant on account of her injuries. The same day, V. L. Hash, a local attorney, appeared before the Honorable JOSEPH S. JENCKES, at that time judge of the superior court of Maricopa County, and presented to him (a) a complaint, which had just been filed, setting up plaintiff's injuries, claiming that they were caused by the negligence of defendant, and praying for judgment in the sum of $10,000; (b) a petition for the appointment of Chester Martin as guardian *ad litem;* (c) an order for his appointment; (d) a petition asking that the claim of plaintiff be settled for the sum of $1,285.15, signed by plaintiff; (e) an order approving the compromise as aforesaid, discharging the guardian *ad litem* as such, and ordering the amount of the settlement to be paid directly to the minor; and authorizing Martin to release defendant from all liability and dismiss the suit with prejudice.

The matter was discussed between Hash and Judge JENCKES, and the order appointing the guardian *ad litem,* and that approving the compromise and directing payment to be made directly to plaintiff, discharging the guardian and authorizing his execution of the release and the dismissal of the suit with prejudice, upon the payment of the amount fixed by the order of compromise, were then made.

Defendant was protected against liability for the accident set up in the complaint by a policy issued by the Commercial Casualty Company of Glenn Falls, and the insurance carrier on the same day and after the execution of the order above set forth made a draft in the sum of $1,285.15, payable jointly to Martin and plaintiff, and delivered it to the former. He visited plaintiff in the hospital, and without explaining to her the nature of the draft, or why she was asked to indorse it, secured her signature thereon. He also indorsed it himself as guardian *ad litem,* and, as Peoples Investigation & Adjustment Agency, cashed the draft, executed a release of plaintiff's cause of action, and dismissed the case already filed with prejudice, but never paid to plaintiff, nor to any person legally authorized to accept the money on her behalf, one cent of the proceeds of the draft. Four months thereafter plaintiff filed a petition setting up the order of the court for payment as aforesaid, and alleging that she had never received any of the proceeds of the settlement. Thereupon the trial court made the following order:

"It having appeared to the Court from the Petition of Rosa Pacheco, Plaintiff herein, that said cause had been settled, and the Court having on June 3, 1932, entered its Order directing that there be paid to the Plaintiff in compromise of said case the sum of $1285.15, and that said suit be dismissed with prejudice to rights of Plaintiff upon payment of said

sum. And it now, on this 6th day of October, 1932, being made to appear to the Court by affidavit of Rosa Pacheco, the said Plaintiff, that she has received no part of said $1285.15, now, therefore, it is now by the Court ordered that the Order heretofore entered herein on July 6, 1932, dismissing said cause with prejudice to rights of Plaintiff be and same is hereby vacated and set aside and said cause reinstated upon docket of this Court the same as though said Order of dismissal had not been entered. And it is further ordered that the Clerk of this Court give notice to the defendant of the entry of this Order and that said defendant have 20 days from this date to enter his appearance and answer the complaint of the Plaintiff.''

A few days later the court appointed Mollie Hudgins as guardian *ad litem* of plaintiff, and discharged Chester Martin.

Paul J. Feehan thereafter appeared as attorney for plaintiff and filed an amended complaint, setting up generally the same cause of action as that appearing in the original complaint against defendant, but increasing the demand for damages. Thereupon defendant answered and pleaded in bar of the action the compromise settlement above referred to, together with the payment and release as aforesaid, and also alleged a full release by the father and mother of plaintiff. To this plea in bar a demurrer was interposed, which was overruled by the court, and then a reply was filed setting forth the circumstances under which the compromise and payment were made, and the vacation of the order dismissing the action. The matter came on for trial before the court, and evidence was introduced, both oral and documentary, which showed, in substance, the foregoing facts. The court took the matter under advisement, and finally sustained the plea in bar and ordered the action dismissed.

■ There are seven assignments of error which we will deal with from the standpoint of the legal questions raised thereby and necessary for the determination of this appeal. It is unquestioned that where a plaintiff has a cause of action against a defendant, and the same is compromised and satisfied in a proper and legal manner, the right of action is entirely extinguished, and no suit may be brought thereon. The real question before us then is whether the foregoing acts constitute such a legal compromise and settlement of plaintiff's cause of action as will bar her from maintaining it further against defendant.

■ Plaintiff was a minor of the age of 17 years at the time of the alleged compromise. It is the law of Arizona that a minor may repudiate any compromise or settlement of any right of action which she may have at any time before her majority, unless it is made by a guardian legally authorized to make such settlement. *Arizona Eastern R. Co.* v. *Carillo,* 17 Ariz. 115, 149 Pac. 313. In this case, however, the court appointed a guardian *ad litem* for the plaintiff, and expressly approved ·the compromise. Such a course was a legal exercise of its discretion, and the minor was bound thereby, unless the order of approval was set aside in a proper manner. *Dockery* v. *Central Arizona Light & Power Co.,* 45 Ariz. 434, 45 Pac. (2d) 656. It is contended, however, by plaintiff that this compromise agreement, although perhaps legally made, was never completed by performance, and that defendant, in effect, has repudiated it by failure to pay in a legal manner the amount of the compromise,. so that the court was authorized to and did in the proper exercise of its authority treat the compromise as abandoned by defendant, and reinstate the case.

Where an agreement of compromise has been reached by what is in effect a failure or refusal to perform, the other party may elect to regard the compromise as rescinded and proceed on the original cause of action. *McElrath* v. *United States,* 102 U. S. 426, 26 L. Ed. 189; *Christensen* v. *Hamilton Realty Co.,* 42 Utah 70, 129 Pac. 412. The order of the court above set forth does not, in so many words, state that the compromise is set aside. It merely directs the reinstatement of the action. We think, however, in view of the rule of law just above quoted, that this was in effect, although not in specific language, a setting aside of the order of compromise on the ground of failure of performance by the defendant and a reinstating of the action of plaintiff as though no compromise settlement had ever been made. Was the trial court justified in this exercise of its discretion? The answer will depend upon whether or not the payment made by the insurance carrier of defendant was a legal one. That the circumstances above set forth show affirmatively that notwithstanding the order of the court the minor herself never received any of the proceeds of the compromise cannot be doubted, nor may defendant rely upon the fact that the check was made jointly to her and to Martin and by her indorsed. He knew that she was a minor; he also knew that she was represented in the proceeding by her guardian *ad litem.* It is true that the court ordered that the payment be made directly to the minor, but a payment by joint check to the minor and guardian *ad litem* was not a compliance with the order of the court, even if it had the right to make such an order; a matter which is at least in grave doubt.

But it is said the payment to the guardian *ad litem* and his receipt and release for the money was suffi-

cient to protect defendant. It is true that he was directed to execute the release upon the payment of the sum agreed upon in the compromise settlement and approved by the court, but did he have the right, under the circumstances, to collect this money? We think our statute supplies the answer. Section 3734, Revised Code, reads as follows:

"Guardian *ad litem* for infant; bond for property. If a minor shall desire to bring a civil action, and such minor has no guardian within the state, the court in which the action is to be brought .shall appoint a guardian *ad litem* for such minor to bring such action; and the action may thereupon be brought in the name of the minor by such guardian. *Such guardian shall not, however, receive any money or property of such minor until he shall file a bond as security therefor in such form, and with such surety, as the court may prescribe and approve.* Whenever it shall appear to any court in any action or proceeding before such court, that the interests of a minor are involved, and that said minor has not appeared therein by a guardian, the court shall forthwith appoint a suitable person to act as guardian *ad litem* for such minor to protect the interests of such minor in such action or proceeding." (Italics ours.)

It will be seen that therein is an express prohibition against a guardian *ad litem* receiving any money or property belonging to the minor unless and until he files a bond as security therefor. But it is contended that since the court is allowed to fix the form and character of the surety of such a bond in its discretion, it may also dispense with the necessity of any bond whatever. We think this a *non sequitur*. Different circumstances may change the form of bond required and the class of surety to be approved, and the legislature doubtless gave judicial discretion to the court in this particular, so that it might adopt the form and the surety to the necessities of each action; but in view of the great importance of the proper protection of the in-

terests of minors we cannot believe that the legislature intended in this indirect manner to violate the general principle that all guardians must be bonded. Had it so intended, it would doubtless have specifically so provided. We hold, therefore, that, so far as the requirement of a bond sufficient under the circumstances to fully protect the assets of the child is concerned, the court had no discretion; that its order in this respect was void; and that any payment made by a debtor to a guardian *ad litem* who has not given bond is without effect and cannot prejudice the rights of a minor. Since no bond was given, no payment was legally made to the guardian, and he was not authorized to execute any release until a legal payment was made.

But it is also contended that the father and mother of the minor released the cause of action, and defendant urges that they may do this under section 3730, Revised Code 1928, which reads as follows:

"Action for injury to child. A father, or in case of his death, or desertion of his family, the mother, may maintain an action for the injury of a child, and a guardian for the injury of his ward."

This section first appears in our law in the Code of 1901 (section 1305). It is urged by defendant that it authorizes the father or mother to maintain an action to recover for the damages due to the child itself as a result of the injury, and, therefore, to compromise a claim for such damages. It is contended on the other hand by plaintiff that it merely confirms and enlarges the common-law right of the father to maintain an action for loss of services. There are a number of states which have statutes similar to, if not identical with, the one just cited. In Minnesota it is held, interpreting such a statute, that the action created thereby is one maintained by the father or

mother for the injuries to the child itself, and that any recovery thereunder is held by them as trustees for the child. *Hannula* v. *Duluth & I. R. R. Co.,* 130 Minn. 3, 153 N. W. 250; *Johnson* v. *Minneapolis & St. L. R. Co.,* 101 Minn. 396, 112 N. W. 534. On the other hand, in the states of Indiana, Kentucky, and California, similar statutes are interpreted as referring merely to the common-law action for loss of services, and it is held their purpose is to enlarge such action by giving it to the mother when the father, by reason of the circumstances set forth in the statutes, is unable to act. *Citizens' St. R. Co.* v. *Willoeby,* 15 Ind. App. 312, 43 N. E. 1058; *Kentucky Service Co.* v. *Miracle,* 246 Ky. 797, 56 S. W. (2d) 521; *Durkee* v. *Central Pac. R. Co.,* 56 Cal. 388, 38 Am. Rep. 59.

The question has never been specifically decided in this jurisdiction, but we think the case of *Arizona Eastern Railroad Co.* v. *Carillo, supra,* inferentially bears out the decisions last cited. In that case there was a release signed by both the minor and his parents. The infant thereafter brought suit for damages, and this court in its opinion on appeal ignored entirely the fact that the release was signed by the parents, and devoted practically the entire opinion to determining the effect of its execution by the minor himself. If we had considered that the release by the parents had any effect on the infant's own cause of action, we certainly would at least have discussed that factor of the case. Further, the rule contended for by plaintiff is in harmony with the general principles governing the protection of infants. With rare exceptions, and these generally expressly provided for either by statute or by will or deed, no person is authorized to dispose of or in any manner affect the property rights of an infant except under order

of a court of competent jurisdiction, and when he has given sufficient security for the protection of the rights of the infant. Ordinarily a parent may not handle property legally that of his child without giving a bond to protect the minor. If we are to give the statute the interpretation placed on it by defendant, this principle would be violated. We hold, therefore, that section 3730, *supra,* does not give to the father or mother of the infant the right to maintain an action for damages due to the infant himself as a result of his injuries, but only to such damages as they may show to have accrued to them in their own right. The release executed by the father and mother in this case could in no manner affect the personal rights of the infant in the present action.

■■ Since no payment of the compromise settlement was ever made to the minor in person, and since the guardian *ad litem* was not authorized to receive it, we think the court was justified when these facts were called to its attention in treating the compromise as repudiated by defendant, and in ordering that the original action be reinstated on that theory. There is some point made of the fact that the order reinstating was not served upon the defendant in accordance with the Uniform Rules of the Superior Court. Since no summons in the original action had been served upon him, nor had he entered an appearance therein, he was not, strictly speaking, then a party thereto, and service was not technically necessary. But even if he were entitled to service, since the failure to serve an *ex parte* order is not jurisdictional and since defendant appeared and answered to the complaint in the lower court without raising this point, we think he cannot successfully maintain it on appeal. We hold, therefore, that since the compromise approved by the trial court had never been

carried into effect, and since such court, acting in its undoubted discretion, had treated it as rescinded and had reinstated the original action, defendant was not in a position to plead the compromise in bar of the action, and plaintiff's demurrer to such plea should have been sustained.

It is argued strenuously that it is inequitable that defendant or his insurance carrier should be compelled to pay twice for the injuries suffered by plaintiff. After examining the entire record, we are strongly impressed by the fact that it is very doubtful whether either of them is in a position to appeal to the principles of equity. "He who comes into equity must come with clean hands." The plaintiff, an ignorant Mexican girl, seventeen years old, was lying in the hospital two days after the accident and suffering from the very severe injuries which she sustained, when Martin, an entire stranger to her, appeared without any solicitation on her part and secured her signature to a petition that he be appointed her guardian *ad litem*, without letting her know its purpose or effect. On the same day, an attorney whom she did not know appeared before the court, settled the matter, and turned the carrier's check over to Martin. The latter secured for himself the entire proceeds of the compromise, and then, so far as the records show, disappeared without even settling her physician's and hospital bills, to say nothing of giving her any compensation for her injuries. It appears to us that defendant and his insurance carrier were either engaged with Martin in a collusive attempt to defraud the plaintiff, or, looking at their conduct from the most charitable standpoint, grossly negligent in not seeing that a proper and legal settlement was finally concluded.

In justice to Messrs. Struckmeyer & Jennings, who represented the defendant in this appeal, we wish to state that they did not come into the case until after the order had been made reinstating the complaint, and that our remarks are in no way intended to apply to them.

For the foregoing reasons, the judgment of the superior court is reversed, and the case remanded, with instructions to sustain plaintiff's demurrer to the plea in bar, with leave to defendant to answer the complaint, and for such further proceedings as may be advisable.

McALISTER and ROSS, JJ., concur.