[Civ. No. 38189. Second Dist., Div. Five. Aug. 14, 1972.]

MCA, INC., Plaintiff and Respondent, v.
UNIVERSAL DIVERSIFIED ENTERPRISES CORPORATION,
Defendant and Appellant.

## COUNSEL

Simon, Sheridan, Murphy, Thornton & Medvene, Thomas R. Sheridan and Richard C. Leonard for Defendant and Appellant.

Rosenfeld, Meyer & Susman, Fitzpatrick & Wiley, Peter R. Cohen and Robert H. Thau for Plaintiff and Respondent.

## OPINION

**STEPHENS, J.**—In this action for unlawful detainer filed by plaintiff MCA, Inc., defendant Universal Diversified Enterprises Corporation appeals from a final judgment incorporating (1) an order granting plaintiff's motion for partial summary judgment (for possession of certain real property);[1] and (2) the subsequent granting of damages (including those for unlawful detention of property).[2]

### The Facts Relevant to the Issues on Appeal

On June 21, 1966, defendant encumbered the real property in question by executing a promissory note for $715,000. The note was secured by a deed of trust that provided the trustee with the right of sale in the event of Universal's default. Both the note and the trust deed were in favor of Gibraltar Savings and Loan Association. Universal defaulted in payment on August 10, 1967; Gibraltar subsequently caused a trustee's sale to be held on June 24, 1968, and plaintiff purchased the property for $721,100. Defendant failed to vacate the premises after service of notice to quit on

---

[1] The motion for partial summary judgment was heard and granted by Judge Robert W. Kenny.

[2] The question of damages was heard by Judge Richard C. Fildew, who incorporated plaintiff's successful motion for partial summary judgment into his final judgment.

June 26, 1968. On July 1, 1968, plaintiff filed its first[3] action for unlawful detainer. On July 5, 1968, the parties executed a stipulation giving defendant the right to remain on the property "until a trial court judgment [entitling] plaintiff MCA to a writ of possession or the appointment of a receiver," even though defendants "admit, acknowledge and agree that plaintiff MCA is now entitled to a writ of immediate possession pursuant to C.C.P. § 1166a for said real property."

In substance, defendant's answers to the complaints alleged, among other things, that the trustee's sale was null and void because it was improperly held, and sought, among other things, damages "for plaintiff's inducing [Gibraltar] to breach the indemnity agreement with defendants, and for plaintiff's intentional interference with the contractual relationship between [Gibraltar] and the defendants"; and prayed: that the trustee's sale be declared null and void; that plaintiff be declared at most a mortgagee and not entitled to possession of the real property; and for damages for plaintiff's alleged collusion with the trustee as well as with Gibraltar.

On December 26, 1968, plaintiff's motion for partial summary judgment was granted, and it was ordered that plaintiff was entitled to possession of said property; that the issues relating to possession and the issue of damages be severed; and that the consolidated actions proceed to trial on the issue of damages for unlawful detention only.

On June 2, 1969, after trial before a different judge on the issue of damages for unlawful detention, judgment was entered ordering that plaintiff recover possession of the real property in question, and that plaintiff recover from defendant the sum of $136,800.

### Defendant's Contentions

On appeal, defendant first contends that "the California procedure allowing a non-judicial trustee's sale fails to satisfy the due process requirements of the United States and California Constitutions."[4] Defendant's contention is unavailing, for even if we assume, arguendo, that the "Cali-

---

[3]At that time the trustee's deed to plaintiff contained a technical defect. A corrected trustee's deed was recorded, and plaintiff instituted its second unlawful detainer action. The two actions were subsequently consolidated.

[4]"Section 13 of article I of the [California] Constitution provides in part that no person shall '. . . be deprived of life, liberty, or property without due process of law . . . .' This provision has been held to be identical in scope and purpose with the Fourteenth Amendment of the Federal Constitution. (*Manford* v. *Singh*, 40 Cal.App. 700 [181 P. 844].)" (*Abstract Investment Co.* v. *Hutchinson*, 204 Cal. App.2d 242, 245 [22 Cal.Rptr. 309].)

fornia procedure" does violate due process, "the hearing required by due process is subject to waiver" (*Boddie* v. *Connecticut,* 401 U.S. 371, 378-379 [28 L.Ed.2d 113, 119, 91 S.Ct. 780]), and we believe that defendant clearly waived any such right.[5]

In *D. H. Overmyer Co.* v. *Frick Co.,* 405 U.S. 174, 188 [31 L.Ed.2d 124, 135, 92 S.Ct. 775], the United States Supreme Court, in holding that the right to prior notice and hearing had been waived in that case, made the following statement: "Our holding, of course, is not controlling precedent for other facts of other cases. For example, where the contract is one of adhesion, where there is great disparity in bargaining power, and where the debtor receives nothing for [relinquishment of the right], other legal consequences may ensue."

In the case before us, defendant, a corporation, executed the trust deed as security on a promissory note of $715,000. Defendant neither complains of a great disparity of bargaining power, nor contends that it received nothing in exchange for its agreeing to a non-judicial trustee's sale in the event of its default. Defendant does contend, however, that it "cannot be disputed that deeds of trust are usually embodied in form documents prepared by the lending institution, and do not constitute bargained for contracts in the usual sense of that term." Form contracts, however, are not adhesion contracts; the use of a form contract by one "exercising a superior bargaining power" is but one of the characteristics to be weighted by the finder of fact in trying a contract under a charge of adhesion. (*Tunkl* v. *Regents of University of California,* 60 Cal.2d 92, 98-100 [32 Cal.Rptr. 33, 383 P.2d 441, 6 A.L.R.3d 693].) As a consequence, we find that the trust deed here in question did not constitute a contract of adhesion, and even if we were to assume that non-judicial trustee sales do violate a constitutional right to a prior hearing, defendant clearly waived any such right.

Defendant next contends that the trial court erred in granting plaintiff's motion for partial summary judgment because its affidavits in opposition

---

[5]In pertinent part, the trust deed in question provides as follows: "Upon default by Trustor in payment of any indebtedness secured hereby [ , ] . . . Beneficiary may declare all sums secured hereby immediately due and payable by delivery to Trustee of written declaration of default and demand for sale and of written notice of default and election to cause to be sold said property. . . . After the lapse of such time as may then be required by law . . . Trustee, without demand on Trustor, shall sell said property at the time and place fixed by it in said notice of sale . . . at public auction to the highest bidder."

to the motion raised triable issues of fact[6] with regard to plaintiff's title to the property in question.

■ It is, of course, unquestioned that a summary judgment is improper whenever "affidavits in opposition to said motion . . . set forth facts showing that the [defendant] has a good and substantial defense to the plaintiff's action (or to a portion thereof). . . ." (Code Civ. Proc., § 437c.) ■ The extent, however, to which a plaintiff's title may be a triable issue in an action brought pursuant to Code of Civil Procedure section 1161a, subdivision 3 was discussed by the California Supreme Court in *Cheney* v. *Trauzettel,* 9 Cal.2d 158, 160 [69 P.2d 832]: "In our opinion the plaintiff need only prove a sale in compliance with the statute [Civ. Code, § 2924] and deed of trust, followed by purchase at such sale, and the defendant may raise objections only on that phase of the issue of title." (See also, *Crummer* v. *Whitehead,* 230 Cal.App.2d 264, 268 [40 Cal.Rptr. 826]; *Kartheiser* v. *Superior Court,* 174 Cal.App.2d 617, 620 [345 P.2d 135]; and *Bliss* v. *Security-First Nat. Bank,* 81 Cal.App.2d 50, 58-59 [183 P.2d 312].) "Irrespective of the merits of [other] defenses raised by the answer, the alleged equitable grounds of attack on plaintiff's title have no place in the present summary proceeding, for if such issues are permissible, the proceeding entirely loses its summary character. . . . Matters affecting the validity of the trust deed or primary obligation itself, or other basic defects in the plaintiff's title, are neither properly raised in this summary proceeding for possession [Code Civ. Proc., § 1161a, subd. 3], nor are they concluded by the judgment." (*Cheney* v. *Trauzettel, supra,* at p. 160; see also, *Higgins* v. *Coyne,* 75 Cal.App.2d 69, 73 [170 P.2d 25]; *Seidell* v. *Anglo-California Trust Co.,* 55 Cal.App.2d 913, 921 [132 P.2d 12]; *Delpy* v. *Ono,* 22 Cal.App.2d 301, 303 [70 P.2d 960]; Cf. *Union Oil Co.* v. *Chandler,* 4 Cal.App.3d 716, 721 [84 Cal.Rptr. 756].)[7]

As a consequence, defendant's attacks upon plaintiff's title other than

---

[6]Specifically, defendant asserts that its affidavits show plaintiff's title to be defective for four reasons: (1) plaintiff acquired its title as a result of collusion with Gibraltar; (2) plaintiff caused defendant's default by inducing Gibraltar to breach certain contractual agreements then existing between Gibraltar and defendant; (3) plaintiff held only a mortgage and not a deed, and therefore plaintiff had no right of possession; (4) plaintiff's acquisition of title had not been in strict compliance with the mandatory procedures set forth in Civil Code section 2924.

[7]The United States Supreme Court has recently reaffirmed its position that it is constitutionally "permissible to segregate an action for possession of property from other actions arising out of the same factual situation that may assert valid legal or equitable defenses or counterclaims." (*Lindsey* v. *Normet,* 405 U.S. 56, 67 [31 L.Ed. 2d 36, 47, 92 S.Ct. 862]; see also, *Grant Timber & Mfg. Co.* v. *Gray,* 236 U.S. 133 [59 L.Ed. 501, 35 S.Ct. 279]; *Bianchi* v. *Morales,* 262 U.S. 170 [67 L.Ed. 928, 43 S.Ct. 526].)

by attempting to show plaintiff's noncompliance with Civil Code section 2924 did not constitute valid defenses to plaintiff's action, and therefore did not raise triable issues of fact. In addition, defendant's assertion of plaintiff's noncompliance with Civil Code section 2924 did not raise a triable issue "because we do not find in the record any offer on the part of [defendant] to pay the full amount of the debt for which the property was given as security. Some disposition on the part of [defendant] to do equity by tendering the amount of the debt due is a prerequisite to [a] demand for a judgment cancelling the trustee's sale. (*Py* v. *Pleitner,* 70 Cal.App.2d 576, 582 [161 P.2d 393], and cases cited. See also *Shimpones* v. *Stickney,* 219 Cal. 637, 649 [28 P.2d 673].)" (*Crummer* v. *Whitehead, supra,* at pp. 268-269; see also, *Humboldt etc. Society* v. *March,* 136 Cal. 321, 324 [68 P. 968].)

Defendant further contends, however, that its asserted defenses did raise triable issues of fact for the reason that defendant had stipulated to plaintiff's right of possession, and in unlawful detainer actions where possession is undisputed, such defenses are properly before the court.[8] In considering this contention, though, we need go no further than defendant's assertion that it had stipulated to plaintiff's right of possession; we do not believe that there was any such stipulation. The language of the stipulation upon which defendant relies is the following: "1. Defendants . . . admit . . . that plaintiff . . . is now entitled to a writ of immediate possession pursuant to C.C.P. § 1166a for said real property, in that defendant . . . among other things, has no property that is subject to execution sufficient to satisfy the amount of damages sought to be recovered by plaintiff. . . . However, defendant . . . shall remain in possession of said real property . . . until a trial court judgment which entitles plaintiff . . . to a writ of possession or the appointment of a receiver for said real property." This language, at best, however, represents only a limited stipulation as to plaintiff's right of possession pursuant to Code of Civil Procedure section 1166a.[9] "Since the purpose of section 1166a is to give immediate possession to the landlord where the tenant is insolvent on the apparent rationale that he may not respond to damages

---

[8]Defendant relies upon the following language of *D'Amico* v. *Riedel,* 95 Cal.App.2d 6, 8 [212 P.2d 52]: "It is the general rule that neither a counterclaim nor crosscomplaint is permissible in an action in unlawful detainer. . . . This rule, however, is subject to the exception that a counterclaim or cross-complaint may be maintained where it appears that prior to the joining of the issues of fact the tenant has voluntarily surrendered possession of the premises and the issue of possession is thus removed from the case . . . ."

[9]Code of Civil Procedure section 1166a has recently been declared to be unconstitutional in *Mihans* v. *Municipal Court,* 7 Cal.App.3d 479 [87 Cal.Rptr. 17].

*if* the landlord ultimately prevails in the unlawful detainer action, it is clear that the primary object of section 1166a is to ascertain whether the tenant is solvent or has sufficient property subject to execution so as to satisfy the judgment which the landlord may obtain for the damages incident to the unlawful detainer action. Accordingly, if the tenant is insolvent or does not have the property subject to execution he must immediately surrender the premises; if he is solvent he cannot be compelled to do so." (*Mihans* v. *Municipal Court,* 7 Cal.App.3d 479, 489 [87 Cal.Rptr. 17].) Therefore, defendant's stipulation as to plaintiff's right of possession pursuant to section 1166a was, in fact, only a limited stipulation that defendant was insolvent, and it was not a stipulation as to plaintiff's superior right of possession. A reading of the second paragraph of the stipulation shows clearly that the right of possession was a disputed issue: "2. If trial court judgment is for plaintiff . . ., plaintiff . . . shall be entitled to immediate possession of said real property. . . . If trial court judgment is for defendant . . ., plaintiff . . . shall surrender possession if it is then in possession. . . ." As a consequence, we find that defendant had not stipulated to plaintiff's superior right of possession, that possession was a disputed issue, and that, therefore, defendant's asserted defenses did not raise triable issues of fact.

Defendant's next contention is that, for various reasons,[10] the trial court erred in not striking the testimony of plaintiff's expert witness. We have examined defendant's specific assignments of error and find the contention to be without merit. ■ "Generally speaking, opinion evidence as to value 'usually goes no further than to give the court more or less general ideas on the subject. From the evidence thus received a trial court must draw its own conclusions of value by a process of balancing and reconciling, . . .'" (*City of Gilroy* v. *Filice,* 221 Cal.App.2d 259, 268 [34 Cal. Rptr. 368].) ■ "Where a witness testifies as to value and bases his opinion entirely upon improper considerations or incompetent and inadmissible matters, his testimony may be properly stricken from the record [but where] the valuation testimony embraces proper as well as improper considerations, a motion to strike may properly be denied and the matter left to the court or jury to determine the weight to be given the testimony. The question is ad-

---

[10]In particular, defendant complains that plaintiff's expert erroneously included certain personalty in making his evaluations, made his evaluations upon an assumption that the property had a marketable title, relied upon the research of one of his employees, relied upon a particular trade journal, assumed that the property did not include a swimming pool, assumed certain rental rates, assumed that the basement was usable for storage space, assumed there was no upkeep expense for the swimming pool area, failed to consider who owned the restaurant equipment, failed to consider who paid the utilities for the subtenant's shops, and failed to consider the extent to which defendant had to pay liability and other insurance.

dressed to the discretion of the trial court. . . ." (*Id.*, at pp. 270-271.) "As the court said in *People* v. *Nahabedian, supra,* 171 Cal.App.2d 302, 310 [340 P.2d 1053], '[i]t must be remembered that the facts stated as reasons for the opinion of the witness do not become evidence in the sense that they have independent probative value upon the issue as to market value. On the contrary, they serve only to reinforce the judgment of the witness, that is, they go to the weight to be accorded his opinion [citation].' " (*Id.* at p. 271.) ■ "It is almost the universal rule . . . that the trial court must be left to determine the qualifications of an expert [citations] and this determination will seldom, in the absence of a clear abuse of discretion, be reversed on appeal." (*People* v. *Murray,* 247 Cal.App.2d 730, 735 [56 Cal.Rptr. 21].) ■ "The qualifications of an expert witness are for the trial court [citation] and any question as to the degree of his knowledge goes to the weight of his testimony rather than as to its admissibility." (*People* v. *Penny,* 44 Cal.2d 861, 866 [285 P.2d 926].)

■ Defendant's final contention is that "the court erred in granting [plaintiff] damages for the portion of the property controlled and in the possession of [defendant's] subtenants. The only measure of damages applicable to this portion of the property, if any, would be the total rent received by [defendant] from the subtenants, less the costs incurred in maintaining the property for the subtenants." We cannot agree. The proper measure of damages in an action brought pursuant to Code of Civil Procedure section 1161a, subdivision 3 is "the detriment to the owner because of the unlawful detention of the property, which could not be computed except from testimony which was adduced showing the reasonable rental value thereof." (*Stockton Morris Plan Co.* v. *Carpenter,* 18 Cal.App.2d 205, 214 [63 P.2d 859]; see also, *Cruce* v. *Stein,* 146 Cal. App.2d 688, 693 [304 P.2d 118].) Here, plaintiff's detriment caused by defendant's unlawful detention was measurable in the amount of a reasonable rental value that plaintiff might have realized had plaintiff not been denied possession unlawfully. As a consequence, the court committed no error by considering, in part, the rents received by defendant during the period of unlawful detention in measuring plaintiff's damages.

The judgment is affirmed.

Kaus, P. J., and Aiso, J., concurred.

A petition for a rehearing was denied September 6, 1972, and appellant's petition for a hearing by the Supreme Court was denied October 12, 1972.