774 P.2d 822

**Dennis R. EARDLEY,**
**Plaintiff–Appellant,**

v.

**Seymour GREENBERG and Sarah Greenberg, husband and wife; Investors Security Management, Inc., an Arizona corporation, Defendants–Appellees.**

**No. 1 CA–CV 88–011.**

Court of Appeals of Arizona,
Division 1, Department D.

March 2, 1989.

Review Granted in Part and Denied in Part June 20, 1989.*

* Corcoran, J., of the Supreme Court, recused himself and did not participate in the determination of this matter.

Bosco & DiMatteo by Carm R. Moehle, Phoenix, for plaintiff-appellant.

William K. Whissen, Phoenix, for defendants-appellees.

## OPINION

GREER, Judge.

This is an appeal from the trial court's refusal to set aside a trustee's sale. For the reasons set forth below, we reverse and remand.

Since this is an appeal from a summary judgment, we view the facts and all inferences therefrom most favorably to the appellant. *State ex rel. Corbin v. Challenge, Inc.*, 151 Ariz. 20, 725 P.2d 727 (App.1986). Appellant Dennis R. Eardley was the trustor under a deed of trust on property located in Phoenix, Arizona. In September 1984 the original beneficiary assigned its interest to four parties in the following proportions:

| | |
|---|---|
| Seymour and Sarah Greenberg | 10/40th interest |
| Robert S. Leiserowitz | 5/40th interest |
| Albert L. and Barbara Flaig | 19/40th interest |
| Michael and Claudia Goodman | 6/40th interest |

In June 1986, Robert S. Leiserowitz, Michael and Claudia Goodman, and Sarah and Seymour Greenberg granted special powers of attorney to appellee Seymour Green-

berg. The powers of attorney authorized Seymour Greenberg to perform various functions, including the authority to "sign for a substitute of Trustee." The powers of attorney were not recorded. That same month, the remaining beneficiaries, Albert and Barbara Flaig, transferred their 19/40th interest to Seymour and Sarah Greenberg, as joint tenants.

Eardley subsequently defaulted on the note secured by the deed of trust. On October 9, 1986, Seymour Greenberg executed and recorded a Notice of Substitution of Trustee (Notice of Substitution), appointing appellee Investors Security Management, Inc. (Investors), as trustee to replace the original trustee. He then instructed Investors to initiate trustee's sale proceedings pursuant to A.R.S. § 33–807, *et seq.* A trustee's sale was subsequently held January 9, 1987, at which Seymour and Sarah Greenberg were the successful bidders.

In the meantime, on October 3, 1986, Eardley applied for a loan at First Interstate Bank to refinance the obligation secured by the deed of trust. First Interstate approved the loan. The title company, Security Title, informed the beneficiaries that the identity of the trustee was uncertain because of certain deficiencies in the notice of substitution. It made several suggestions on how the deficiencies could be cured. The beneficiaries, however, claimed the notice of substitution was not defective and refused to follow any of Security Title's suggestions to clear up the record. Security Title subsequently refused to issue title insurance and First Interstate would not fund the loan. The trustee sale then took place, resulting in Eardley's forfeiture of the trust property.

Shortly after the trustee's sale, Eardley filed suit against Seymour and Sarah Greenberg (Greenberg) and Investors seeking to set aside the trustee's sale, asserting the notice of substitution was defective and Investors did not qualify as a trustee. Upon the parties' cross motions for summary judgment, the trial court entered summary judgment in favor of Greenberg and Investors. It specifically held the issuance of the trustee's deed at the trustee's sale

created a presumption of compliance with A.R.S. § 33–811, and that any technical statutory violations were harmless, were not prejudicial, and did not contravene the legislative intent behind the enactment of the statutes. The trial court also held that Eardley's failure to obtain new financing was not a sufficient legal reason to void the trustee's sale.

Eardley raises the following issues on appeal:

(1) Whether A.R.S. § 33–804(C) requires all of the beneficiaries of a deed of trust to personally acknowledge a notice of substitution of trustee;

(2) Whether Seymour Greenberg possessed the authority to deal with one hundred percent of the beneficial interests in the deed of trust when he executed the notice of substitution of trustee;

(3) Whether the special powers of attorney granted to Seymour Greenberg by the beneficiaries were required to be recorded;

(4) Whether A.R.S. § 33–401(D) applies to notices of substitution of trustees, and if it does, whether the failure to comply with that statute renders the notice of substitution of trustee voidable;

(5) Whether appellee Investors Security Management, Inc. was qualified to serve as a trustee; and

(6) Whether the cumulative effect of the alleged defects is sufficient to render the trustee's sale void.

Greenberg argues as a cross-issue that Eardley did not comply with a prerequisite to litigation that he tender all amounts due under the deed of trust, and that he, therefore, cannot set aside the trustee's sale.

The major premise of Eardley's position is that Investors did not have the authority to conduct the trustee's sale because the notice of substitution did not adhere to statutory requirements. Because of these deficiencies, he argues, the trial court should have entered summary judgment in

Eardley's favor, or at the very least, allowed the matter to go to trial.

Although our disposition of the first issue renders a discussion of issues 2, 3 and 4 unnecessary, we nevertheless address them, in light of Eardley's final argument that the cumulative effect of the alleged defects is sufficient to set aside the trustee's sale.

## I. A.R.S. § 33–804

Eardley first argues that A.R.S. § 33–804, which sets forth the method by which a beneficiary can appoint a successor trustee, requires notices of substitution to be *personally* acknowledged by *all* beneficiaries. Greenberg counters that under the general principles of agency law, a power of attorney may be used for virtually all purposes, except where personal performance is obviously required, and that this is not an exception.

Section 33–804(C) states:

Substitutions shall be made by recording notice of the substitution in the office of the county recorder of each county in which the trust property or some part of the trust property is situated at the time of the substitution. The beneficiary shall give written notice through registered or certified mail, postage prepaid, to the trustor, the trustee and the successor trustee. *A notice of substitution of trustee shall be sufficient if acknowledged by all beneficiaries under the trust deed....*

A.R.S. § 33–804(C) (1984) (emphasis added).

We agree with Greenberg that, as a general rule, a power of attorney may be used to achieve the same legal consequences as if the principal had performed. *See generally* Restatement (Second) of Agency, § 17 (1958). Here, however, A.R.S. § 33–804(C) specifically requires a notice of substitution to be "acknowledged by all beneficiaries ..." in order to be sufficient. In our view, this clearly and unambiguously requires the personal signature of each beneficiary, so that each signature can be acknowledged.[1]

1. Greenberg points to Illustration #1 in comment a to § 17 of the Restatement as support

for his argument that a power of attorney is acceptable to meet the requirements of

This requirement can be contrasted with other sections in Title 33 that expressly permit certain acts to be performed by an attorney-in-fact. For example, a conveyance of property may be accomplished "by the party disposing of the estate, *or by his agent thereunto authorized by writing.*" A.R.S. § 33–401(A) (1976) (emphasis added). In addition, an attorney in fact is permitted to execute a deed of release upon satisfaction of the terms of a mortgage or deed of trust. A.R.S. § 33–708 (1974).

We conclude, based upon the clear language in § 33–804(C) and a comparison with other statutory provisions that specifically allow other acts to be performed by an attorney-in-fact, that a notice of substitution must be personally signed and acknowledged by all the beneficiaries to be valid.

## II. BENEFICIAL INTEREST

In the alternative, Eardley argues the notice of substitution was defective because Greenberg did not own nor have a power of attorney over one hundred percent of the beneficial interests in the deed of trust. Powers of attorney were given to Seymour Greenberg with respect to 21/40 of the beneficial interest in early June, 1986. Beneficiaries Albert L. and Barbara Flaig transferred their remaining 19/40 interest on June 14, 1986, to Seymour *and* Sarah Greenberg, as joint tenants. Seymour and Sarah Greenberg, as joint tenants, did not, however, grant a second special power of attorney to Seymour Greenberg prior to his execution of the notice of substitution.[2] Thus, Eardley concludes Seymour Greenberg was not acting with the authority of one hundred percent of the beneficial interest in the deed of trust.

■ Greenberg responds by pointing out there was no evidence presented indicating he did not have the authority of one hundred percent of the beneficiaries. Greenberg's affidavit, however, refers to the powers of attorney from the beneficiaries of 21/40 of the total beneficial interest. Viewing that testimony and the powers of attorney included in the record most favorably to Eardley, as we must in an appeal from a summary judgment, it is possible to infer no power of attorney existed regarding the remaining 19/40 beneficial interest. Greenberg neither suggests nor argues he had implied or apparent authority to execute the notice of substitution on behalf of his wife, with whom he held the remaining 19/40 beneficial interest as a joint tenant. He does, however, argue for the first time on appeal, without any reference to the record, that the beneficiaries ratified his acts by their later acceptance of the benefits. We agree an agent's unauthorized acts can be later ratified. *See, e.g., Corral v. Fidelity Bankers Life Ins. Co.*, 129 Ariz. 323, 630 P.2d 1055 (App.1981). However, we do not agree the record thus far supports this conclusion as a matter of law.

We conclude, assuming a notice of substitution can be executed by an attorney-in-fact, that questions of fact preclude a finding as a matter of law that Seymour Greenberg had the authority of one hundred percent of the beneficial interest to execute the notice of substitution.

## III. RECORDING

Eardley argues the powers of attorney were ineffective because they were not recorded. Although he cites no statute which requires that powers of attorney be recorded, he suggests that such a requirement would eliminate the type of title problems he faced when he attempted to refinance the property but could not obtain title insurance.

---

§ 33–804(C). Illustration #3, however, is more analogous to this case:

   A statute requires that the execution of deeds in which married women release their dower interests shall be acknowledged by them personally before a notary. An acknowledgement by an agent to whom husband and wife have given a power of attorney does not validate the deed.

Restatement (Second) of Agency, § 17, comment a, illustration 3 (1958).

**2.** The only special power of attorney to Seymour Greenberg from Seymour and Sarah Greenberg, as joint tenants, is limited to their original 10/40 interest.

This court has previously held that, absent a statutory requirement that powers of attorney be acknowledged, that they need not be. *Adams v. Valley Nat'l Bank,* 139 Ariz. 340, 341, 678 P.2d 525, 526 (App. 1984). We believe the same logic applies to recording. *See* 3 Am.Jur.2d *Agency* § 27, at 531 (1962). As with acknowledgements, no Arizona statute requires that powers of attorney be recorded.[3] A power of attorney, therefore, does not need to be recorded.

### IV. A.R.S. § 33–401(D)

Eardley next argues that former A.R.S. § 33–401(D) applies to notices of substitution under § 33–804(C), and that the notice of substitution failed to comply because it did not name the beneficiaries, include their addresses, or specify the document under which Greenberg was acting on their behalf. Section 33–401(D) provided:

*[E]very deed or conveyance of real property,* or *an interest therein,* located in this state which is executed after the effective date of this section *from a grantor who* on the effective date of this section *holds such property as a* trustee, agent, conservator, executor, administrator, guardian, *attorney-in-fact* or in any other representative capacity whether or not such capacity is identified on the document of title, *shall also name the beneficiaries,* principals or wards *for whom the grantor held title to such property, the addresses of such persons, and shall identify the trust or other agreement under which the grantor is acting* or refer by proper description to book, page and document number of file to an instrument, order, decree or other writing which is of public record in the county in which the property so conveyed is located in which such matters shall appear. Any conveyance of real property, or interests therein, located in this state from a grantor acting in a representative capacity which does not comply with the provisions of this subsection shall be voidable.

A.R.S. § 33–401(D) (1976) (emphasis added).

This section was repealed and replaced by A.R.S. § 33–404, which is similar, but expressly excludes its requirements from an attorney-in-fact. Laws 1987, Ch. 153, §§ 1, 2. Greenberg argues § 33–404 is merely a clarification of previous legislative intent, whereas Eardley argues it indicates an intentional change in the law.

Section 33–804(C) sets forth specific requirements for a valid notice of substitution. It does not require that beneficiaries' names and addresses be listed. The statute also includes a suggested form which does not indicate that beneficiaries' addresses be included. No reference is made to A.R.S. § 33–401(D) or the current § 33–404 in either the statute or the suggested form. Because a specific statute prevails over a conflicting general statute dealing with the same subject, § 33–804(C) prevails over the general requirements of § 33–401(D). *See Pima County v. Heinfeld,* 134 Ariz. 133, 654 P.2d 281 (1982). The requirements of § 33–401(D) therefore do not apply to notices of substitution.

### V. QUALIFIED TRUSTEE

Eardley argues that Investors, a corporation licensed as an insurance agent, is not qualified to serve as a trustee under A.R.S. § 33–803. That statute provides, in pertinent part:

A. Except as provided in subsection B of this section, the trustee of a trust deed shall be:

.      .      .      .      .

4. A *person* who is a licensed insurance agent under the laws of this state.

A.R.S. § 33–803 (1988) (emphasis added).

Because Investors is obviously not a "person" within the ordinary meaning of

---

**3.** This is not to say we do not agree with the logic of Eardley's argument. It is apparent the title problems in this case would have been, at least in part, avoided if the powers of attorney had been recorded because the authority of Seymour Greenberg to act on their behalf would have been a matter of record. This should not be a problem, however, if all the beneficiaries comply with A.R.S. § 33–804(C). *See* discussion, *supra.* It is up to the legislature to create a recording requirement, not the courts.

the term, Eardley argues it is not qualified to serve as a trustee. Although "person" is not defined in Title 33, it is defined in A.R.S. § 1–215 (1985):

24. "Person" includes a corporation, company, partnership, firm, association or society, as well as a natural person....

Based upon this definition, for purposes of § 33–804, "person" does include a licensed corporation. Investors was therefore qualified to serve as a trustee.

## VI. TRUSTEE'S SALE

In light of our determinations that the notice of substitution was insufficient because it was not acknowledged by all the beneficiaries under the deed of trust, and that a question of fact remains regarding whether Seymour Greenberg possessed the authority of all the beneficiaries, we must now consider whether the trustee's sale should be set aside.

Eardley argues the deficiencies were prejudicial because they prevented him from being able to refinance the property and avoid the trustee's sale. Specifically, the title record did not reveal that all of the beneficiaries agreed to the substitution of trustee and the title company refused to issue title insurance without a clarification to the record. In addition, the beneficiaries refused to help clear the record. Because there was no title insurance, First Interstate would not fund the loan.

Greenberg, on the other hand, argues Eardley should not be permitted to set aside the trustee's sale because he never tendered the full amount due, and in the alternative, that Eardley suffered no harm or prejudice because of deficiencies in the notice of substitution.

### a. Tender of Amounts Due

Greenberg cites several California cases for the proposition that courts will refuse to allow an inquiry into trustee's sale proceedings, in the absence of a tender of the amount due on the deed of trust. In *MCA, Inc. v. Universal Diversified Enter. Corp.*, 27 Cal.App.3d 170, 103 Cal.Rptr. 522 (1972), the court stated:

[D]efendant's assertion of plaintiff's non-compliance with (trustee's sale statutes) did not raise a triable issue because we do not find in the record any offer on the part of (defendant) to pay the full amount of the debt for which the property was given as security. Some disposition on the part of (defendant) to do equity by tendering the amount of the debt due is a prerequisite to (a) demand for judgment canceling the trustee's sale.

103 Cal.Rptr. at 525. *See also Arnolds Mgmt. Corp. v. Eischen*, 158 Cal.App.3d 575, 205 Cal.Rptr. 15 (1984); *Karlsen v. American Sav. & Loan Ass'n*, 15 Cal. App.3d 112, 117, 92 Cal.Rptr. 851, 854 (1971); *Crummer v. Whitehead*, 230 Cal. App.2d 264, 268, 40 Cal.Rptr. 826, 829 (1964); *Shimpones v. Stickney*, 219 Cal. 637, 649, 28 P.2d 673 (1934). Greenberg points out that Eardley never tendered the amount owed and suggests it is "pure speculation" that Eardley would have satisfied the debt even if he had been able to obtain the loan from First Interstate.

However well-entrenched it is in California law, the tender doctrine has not been adopted in Arizona. Although the doctrine serves a legitimate purpose, we decline to adopt it in this case. A reasonable inference from the facts is that, although Eardley attempted to satisfy the debt, he was precluded from doing so in large part because of the refusal of Greenberg and the other beneficiaries to clear up the record.

Unrefuted affidavits and exhibits submitted by Eardley establish: 1) Eardley qualified and was accepted for a loan on the trust property; 2) there were title problems stemming directly from the deficient notice of substitution; 3) the beneficiaries were informed of the title problems; 4) several suggestions were made on how to clear up the problems; and, 5) the beneficiaries' response was they did not agree there were any deficiencies, thus essentially refusing to clear up the record.

Specifically, the account manager at Security Title stated in her affidavit:

Because of the refusal of Investors Security and/or its beneficiaries to meet the above-described requirements [re:

notice of substitution], title insurance was not provided to First Interstate Bank, the loan was not funded and escrow did not close.

A banking officer at First Interstate stated: "If title insurance could have been obtained, the loan would have been funded, as Dennis [Eardley] was fully qualified and approved."

■ As Eardley points out, it would be unfair to hold him to a tender doctrine that heretofore has not been the law in this state, when the reason he has been unable to tender the amount due is because of the conduct of the beneficiaries and trustee. We agree and therefore conclude the tender doctrine does not apply and Eardley was not required to tender the amount due as a prerequisite to this litigation.

*b. Setting Aside the Trustee's Sale*

The foregoing brings us to the ultimate question in this appeal—whether to set aside the trustee's sale. Both parties rely on *Main 1 Ltd. Partnership v. Venture Capital Constr. & Dev. Corp.*, 154 Ariz. 256, 741 P.2d 1234 (App.1987), in which this court refused to set aside a trustee's sale where the notices required by A.R.S. § 33–809(B) were mailed one day late. The trustor, Main 1, did not claim it had been harmed or prejudiced by the defect. Instead, it relied on the general principle of Arizona law that strict compliance with the notice requirements of the deed of trust statutes is required in order to have a valid sale. *See Patton v. First Fed. Sav. & Loan Ass'n*, 118 Ariz. 473, 476, 578 P.2d 152, 155 (1978); *LeDesma v. Pioneer Nat'l Title Ins. Co.*, 129 Ariz. 171, 173, 629 P.2d 1007, 1009 (App.1981).

The *Main 1* court first noted that under A.R.S. § 33–811(A), execution and delivery of the deed to a purchaser at a trustee's sale raises a presumption of compliance with the trust statutes, and that knowledge of the trustee is not imputed to the beneficiary. The court then pointed out that Venture Capital, the beneficiary and purchaser, did not have any knowledge of the deficiency in the notices. The court concluded:

No argument has been made by Main 1 that the notice was insufficient because of fraud, misrepresentation, or concealment. There was no evidence presented that Security Title acted in bad faith or breached a fiduciary duty. Equitable relief is not appropriate in this case.

*Id.* 154 Ariz. at 260, 741 P.2d at 1238.

■ We believe that *Main 1* is distinguishable from this case for several reasons. First, the beneficiaries in this case were informed of the deficiencies, yet refused to correct them. Second, in *Main 1* the trustor did not claim it had been prejudiced or harmed by the defective notice. Here, however, Eardley claims that because of the defective notice of substitution, he was unable to obtain title insurance and pay off his indebtedness, resulting in the trustee's sale. Although a trial may reveal other or additional causes for Eardley's inability to obtain financing, the record thus far supports the inference the defective notice of substitution was to blame, and further, that the beneficiaries' unwillingness to cure the defect resulted in the trustee's sale.

We therefore conclude the summary judgment in Greenberg's favor was in error, and remand to the trial court for further proceedings to determine whether the defective notice of substitution was, in fact, the cause of the subsequent trustee's sale. If it was, the trustee's sale must be set aside.

Eardley's request for attorney's fees on appeal pursuant to A.R.S. § 12–341.01 is granted. He is directed to file a statement in compliance with Rule 21(c), Arizona Rules of Civil Appellate Procedure.

Reversed and remanded for proceedings consistent with this opinion.

CORCORAN, P.J., and GRANT, J., concur.

NOTE: The Honorable ROBERT J. CORCORAN, Justice of the Arizona Supreme Court, has been authorized by Administrative Order No. 89–3 of the Chief Justice, to participate in the resolution of this case which was previously assigned to him as a

judge of the Court or to his department before Thursday, January 5, 1989.