857 P.2d 1323

**Elsie GOMEZ, individually and as surviving spouse of Victor Gomez, deceased, and as guardian and next best friend of Maylinda Gomez, date of birth 7/14/79, and Michael Gomez, date of birth 9/13/80, minor children, Plaintiffs–Appellants,**

v.

**MARICOPA COUNTY, a body politic or political subdivision of the State of Arizona, Maricopa Medical Center, a division of Maricopa County Department of Health Services, a body politic or a political subdivision of the State of Arizona, Defendants–Appellees.**

**No. 1 CA–CV 91–440.**

Court of Appeals of Arizona,
Division 1, Department C.

Aug. 10, 1993.

Rockafellow Law Firm by Leighton H. Rockafellow, Tucson, Morgan & Weisbrod by Les Weisbrod, Michael S. Box, William A. Newman, Dallas, TX, for plaintiffs-appellants.

Maricopa County Attys. Office by Gordon J. Goodnow, Jr., Deputy County Atty., Phoenix, for defendants-appellees.

## OPINION

McGREGOR, Judge.

Elsie Gomez filed suit against Maricopa County on behalf of herself and her two minor children for the wrongful death of Victor Gomez, her husband and the children's father. The issue presented is whether a release agreement, signed by relatives of Victor to whom Elsie had given a power of attorney to settle her and the children's claims, bars this action. We hold that the release bars Elsie's individual action. We further hold that the release does not bar the action on behalf of the minor children because no court approved the settlement or appointed and authorized a guardian to settle the children's claims.

### I.

On June 22, 1989, Victor Gomez entered the emergency room of the Maricopa Medical Center complaining of chest pain, shortness of breath, and lower right back pain. While under the care of medical personnel, Victor suffered a cardiopulmonary arrest and subsequently died on June 29, 1989. Victor listed Guadalupe Gonzales, who was Victor's live-in girlfriend and eight months pregnant with Victor's child, as his "next of kin" on the hospital information form. At the time of his death, however, Victor was married to Elsie, who lived in Texas with her and Victor's children, Maylinda and Michael.

During Victor's hospital stay and after his death, several of his relatives expressed concern about the adequacy of Victor's medical care. On the day of Victor's death, hospital personnel met with various relatives to address their concerns. The county medical and risk management personnel

subsequently held other meetings with family members in an attempt to resolve any potential claims.

At a meeting on or about August 9, 1989, Abelardo Gomez and Gloria Hernandez, Victor's brother and sister, stated that they would represent the family in negotiating and settling the claims. They specifically indicated they wanted Victor's five children[1] and his parents to receive compensation.

On or about August 10, 1989, after consulting with the county attorney's office, the county's risk management personnel explained to the brother and sister that they needed to acquire proof of their authorization to represent each claimant as well as proof of each claimant's entitlement to recovery. The county provided the brother and sister funds to travel to Texas and Mexico to acquire the necessary documents and signatures.

The brother and sister returned to Arizona with all necessary documents and signatures, with the exception of Elsie's power of attorney. Elsie chose to return with Victor's siblings to Arizona.

County personnel held one or two more meetings with the brother, the sister, and Elsie. On August 23, 1989, Elsie signed a power of attorney giving the brother and sister the right and authority to act as her agent in negotiating and settling her claim as well as the claims of Michael and Maylinda. The document conferring power of attorney included the statement that Elsie understood that "this settlement"[2] was binding and that no other claim could be made by her or the children.

On August 28, 1989, the brother and sister signed a "Receipt, Release, and Indemnity Agreement" (the Agreement), releasing the claims of specified relatives, including Elsie, Maylinda and Michael. In

exchange for the release, the county purchased annuity policies, under which each of the five children would receive a $100 monthly payment until the age of 18, when each would receive a lump sum payment of $10,000. The county also purchased annuity policies for Victor's parents. The Agreement did not provide for any payment to be made to Elsie.

The county sent a similar release document to Elsie for her signature. Elsie refused to sign the document and filed this action for medical malpractice and wrongful death. The county moved to dismiss or, in the alternative, for summary judgment on the basis that the claims had been settled. In response, Elsie challenged the validity and enforceability of the Agreement. The trial court entered judgment in favor of the county.[3]

Elsie timely appealed. We have jurisdiction pursuant to Ariz.Rev.Stat.Ann. ("A.R.S.") §§ 12–120.21 and –2101.B.

## II.

Whether the trial court erred in concluding as a matter of law that the Agreement bars the wrongful death claims of Elsie and her minor children presents a legal issue, which we review *de novo*. *See Gary Outdoor Advertising Co. v. Sun Lodge, Inc.*, 133 Ariz. 240, 242, 650 P.2d 1222, 1224 (1982).

### A.

#### 1.

Established Arizona law does not permit Elsie, acting solely as a parent, to compromise a right of action held by her minor children. In *In re Estate of Milliman*, 101 Ariz. 54, 415 P.2d 877 (1966), the court observed that the surviving spouse,

---

1. In addition to Michael and Maylinda, Victor's children included the child born to Ms. Gonzales after Victor died and two children living in Mexico.

2. As of August 23, 1989, no settlement agreement had been signed. The parties apparently agree, however, that Elsie had participated in

meetings during which the terms of a proposed agreement were discussed.

3. Because the trial court considered matters outside the pleadings, we treat the trial court's order as granting summary judgment. *Frey v. Stoneman*, 150 Ariz. 106, 109, 722 P.2d 274, 277 (1986).

acting as a statutory trustee for the other beneficiaries, may compromise a wrongful death claim without bringing suit.[4] The court cautioned, however, that the surviving spouse must obtain the consent of the other beneficiaries to settle the action and, if any of the beneficiaries "were minors, a guardian would have to be appointed, and the court would have to approve the compromise." *Id.* at 63, 415 P.2d at 886. The court's holding reflects settled Arizona law that "a minor may repudiate any compromise or settlement of any right of action which [he or] she may have at any time before [his or] her majority, unless it is made by a guardian legally authorized to make such settlement." *Pacheco v. Delgardo,* 46 Ariz. 401, 406, 52 P.2d 479, 481 (1935). A parent, acting solely in his or her capacity as a parent, rather than as a legally authorized guardian, lacks authority to settle the claim of a minor child. *Id.* at 411, 52 P.2d at 482.

In this case, the court neither appointed a guardian to act on the minors' behalf nor approved the settlement. Because Elsie lacked authority to settle the claims of her children, she could not bestow authority upon Victor's brother and sister to settle the children's claims. Consequently, unless some exception negates these established principles, the Agreement did not bar this action on behalf of the children.

**2.**

■ The county argues that such an exception exists. The county contends that requiring approval of the Agreement by a guardian appointed for the minor children or the court was unnecessary because Arizona's Probate Code permits persons paying less than five thousand dollars annually to a minor to perform that duty without court approval or oversight. *See* A.R.S. § 14–5103.[5] We categorically reject this argument.

The county correctly observes that A.R.S. § 14–5103 permits the insurance company to make Michael's and Maylinda's monthly $100 annuity payments directly to Elsie. The question to be decided in this case, however, is not whether the method of payment is correct. The question is whether the settlement of the children's claims, which in turn created the county's duty to make payments, bars this wrongful death action. In our view, section 14–5103 provides no assistance in answering that question.

---

**4.** Elsie, as Victor's surviving spouse, has authority to bring an action for the wrongful death of her husband. An action for wrongful death shall be brought by and in the name of "the surviving husband or wife or personal representative of the deceased person...." A.R.S. § 12–612.A. The action is to be brought for and on behalf of "the surviving husband or wife, children or parents, or if none of these survive, on behalf of the decedent's estate." *Id.*

**5.** A.R.S. § 14–5103 provides:
Any person under a duty to pay or deliver money or personal property to a minor may perform this duty, in amounts not exceeding five thousand dollars per annum, by paying or delivering the money or property to any of the following:
1. The minor, if he is married.
2. Any person having the care and custody of the minor and with whom the minor resides.
3. The guardian of the minor.
4. A financial institution incident to a deposit in a federally insured savings account in the sole name of the minor and giving notice of the deposit to the minor.

This section does not apply if the person making payment or delivery has actual knowledge that a conservator has been appointed or proceedings for appointment of a conservator of the estate of the minor are pending. The persons, other than the minor or any financial institution under paragraph 4, receiving money or property for a minor are obligated to protect and preserve such money and property unless there are not sufficient resources available to provide for the minor's needs and in that event to apply such funds as are necessary to the support and education of the minor, but may not pay themselves except by way of reimbursement for out-of-pocket expenses for goods and services necessary for the minor's support. Any balance not used and any property received for the minor must be turned over to the minor when he attains majority. Within three years after the minor attains majority, he may require an accounting. Persons who pay or deliver in accordance with the provisions of this section are not responsible for the proper application thereof.

In *Walker v. Stephens*, 3 Ark.App. 205, 626 S.W.2d 200 (1981), the Arkansas Court of Appeals interpreted Arkansas Code § 57–136,[6] which uses language nearly identical to that of A.R.S. § 14–5103, to address the same issue as that raised in this appeal. The plaintiff in *Walker*, a member of the armed forces reporting to duty in another state, executed a power of attorney authorizing her attorney to compromise and settle a personal injury claim. The attorney negotiated and accepted a settlement on behalf of Walker and her minor child. Responding to the argument that Arkansas' statute obviated the need for court approval of the settlement of the minor's claim, the court held:

> Section 57–136, cited by Appellee as authorizing settlement of claims for the minor, which amount to less than $1,000 per annum by a parent does not, in our opinion, dictate that conclusion. It merely provides that "any person *under a duty to pay* or deliver money or personal property to a minor" in amounts not to exceed $1,000 per annum may perform their duty by payment ... without the court being required to inquire into the applications of the proceeds. We do not construe this statute as dispensing with the necessity of probate proceedings in the settlement of a minor's claim for tort.

*Id.* 626 S.W.2d at 203–04 (emphasis in original).

The purpose of Arizona's analogous provision, section 14–5103, is to eliminate the need for court approval for each payment made by a person with an existing duty and obligation to pay a minor less than $5,000 per year. The statute is not relevant to the correct procedure for entering into a binding settlement of a minor's wrongful death claim and does not dispense with the need for appointment of a guardian or approval by the court to compromise the minor's claim.

Thus, the trial court erred in holding that the Agreement bars the claims of Maylinda and Michael and therefore erred in granting summary judgment against the children.

**B.**

■ Elsie also argues that the Agreement does not bar her wrongful death claim because county personnel allegedly misrepresented the terms of the Agreement.[7] This argument, however, overlooks a critical fact.

On August 23, 1989, Elsie authorized the brother and sister to settle her claims against the county by giving them her pow-

---

**6.** Ark.Code Ann. § 57–136 has subsequently been renumbered and slightly revised. At the time of the *Walker* decision, section 57–136 stated:

> Any person under a duty to pay or deliver money or personal property to a minor may perform his duty, in amounts not exceeding five thousand dollars ($5,000) per annum, by paying or delivering the money or property to (1) the minor, if he has attained the age of eighteen (18) years or is married; (2) any person having the care and custody of the minor with whom the minor resides; (3) a guardian of the person of the minor; or (4) a financial institution incident to a deposit in a federally insured savings account in the sole name of the minor and giving notice of the deposit to the minor; provided, any amounts in excess of one thousand dollars ($1,000) per annum must also be approved by the Probate Court in the County in this State in which the minor, or the person paying or delivering the money or property, resides or is domiciled. This section does not apply if the person making payment or delivery has actual knowledge

> that a guardian of the estate has been appointed or proceedings for appointment of a guardian of the estate of the minor are pending. The persons, other than the minor or any financial institution under (4) above, receiving money or property for a minor are obligated to apply the money to the support and education of the minor, but may not pay themselves except by way of reimbursement for out-of-pocket expenses for goods and services necessary for the minor's support. Any excess sums shall be preserved for the future support of the minor and any balance not so used and any property received for the minor must be turned over to the minor when he attains majority. Persons who pay or deliver in accordance with the provisions of this section are not responsible for the proper application thereof.

**7.** Elsie stated that the medical center's nurse paralegal told her that the money the children would receive was merely an advance towards a complete settlement that would be finalized later.

er of attorney.[8] Unless the power of attorney itself was not valid, the brother and sister had the same authority as did Elsie herself to enter a release and settlement agreement that was effective as to Elsie. *Eardley v. Greenberg,* 160 Ariz. 518, 520, 774 P.2d 822, 824 (App.1989), *vacated, in part, on other grounds,* 164 Ariz. 261, 792 P.2d 724 (1990) (as a general rule, an agent performing an act authorized by a power of attorney has the same legal consequences as if the principal had performed). Elsie does not argue that the brother and sister obtained her power of attorney through misrepresentations or fraud, that the power of attorney was invalid for any other reason, or that county made misrepresentations to the brother and sister regarding the nature of the settlement. She is, therefore, bound by the act of her agents.

■ Elsie also argues that the Agreement is invalid because no consideration flowed to her. We disagree. "[A] benefit to the promisor or a loss or detriment to the promisee is good consideration for a contract." *Gill v. Kreutzberg,* 24 Ariz. App. 207, 209, 537 P.2d 44, 46 (1975) (citing *Cavanagh v. Kelly,* 80 Ariz. 361, 297 P.2d 1102 (1956)). Here, the county as the promisee suffered a detriment by funding annuities for the benefit of several individuals, including Elsie's two children. Thus, sufficient consideration exists to enforce the Agreement.

### III.

For the foregoing reasons, we affirm the trial court's grant of summary judgment in favor of the county as to Elsie and reverse the grant of summary judgment as to Maylinda and Michael. We remand this case to the trial court for further proceedings consistent with this opinion.

GARBARINO, P.J., and WEISBERG, J., concur.

---

**8.** The power of attorney is as follows:
I Elsie Gomez AM THE LEGAL GUARDIAN/MOTHER OF Michael and Maylinda WHO IS THE CHILD OF VICTOR GOMEZ. I Elsie Gomez AM THE wife OF VICTOR GOMEZ.
I GIVE GLORIA HERNANDEZ AND ABELARDO GOMEZ, WHO ARE THE SISTER AND BROTHER OF VICTOR GOMEZ, THE RIGHT AND AUTHORITY TO ACT AS MY AGENT IN THE NEGOTIATIONS AND SETTLEMENT OF THE CLAIM OF Michael, Maylinda and Elsie WITH THE REPRESENTATIVES OF MARICOPA MEDICAL CENTER/MARICOPA COUNTY. I UNDERSTAND THIS SETTLEMENT IS BINDING AND NO OTHER CLAIM CAN BE MADE BY ME OR THE CHILDREN.
Dated 23 day of August, 1989
The power of attorney was signed by Elsie and notarized.