859 P.2d 785

**In the Matter of the ESTATES OF Lisa Ardy WOODTY, Arley Lewis Woodty and Rick James Woodty, Minor Protected Persons.**

**Arley WOODTY, Plaintiff–Appellant,**

v.

**WESTON'S LAMPLIGHTER MOTELS, Defendant–Appellee.**

**No. 1 CA–CV 91–293.**

Court of Appeals of Arizona, Division 1, Department B.

Sept. 7, 1993.

Law Offices of Frederick C. Creasy, Jr. by Frederick C. Creasy Jr., David W. Hume, Scottsdale, for plaintiff-appellant.

Thomas, Burke & Phillips, P.C. by Craig W. Phillips, Benjamin C. Thomas, Michael J. Watton, Phoenix, for defendant-appellee.

OPINION

FIDEL, Presiding Judge.

The trial court approved settlement of minors' claims for their mother's wrongful death. The settling defendant later sought

by reformation to enlarge the trial court's order to include among those released from liability a previously unmentioned non-party at fault insured by the same liability insurer. We reverse the order of reformation because the trial court was given no basis to find that the settlement remained reasonable if so enlarged.

## PROCEDURAL HISTORY

On March 1, 1987, appellant's wife, Hazel Woodty, died in a fire at the Page Boy Motel in Page, Arizona. At the time of her death, appellant was serving time in a federal prison in Michigan and, through rulings of the Children's Court of the Navajo Nation, their two oldest children were permanent wards of William and Karlene Hayes and their youngest child was a temporary ward of Nancy Fanny Sanders.

After the District Court of the Navajo Nation appointed Ms. Sanders the personal representative of Hazel Woodty's estate, Ms. Sanders filed a wrongful death action in the Superior Court in Coconino County on behalf of the children, naming Weston's Lamplighter Motels, Inc., dba Page Boy Motel ("Weston's") as defendant. Appellant later filed a separate wrongful death action against Weston's on his own behalf. *See Woodty v. Weston's Lamplighter Motels,* 171 Ariz. 265, 830 P.2d 477 (App.1992).

In 1989, the Hayeses and Ms. Sanders petitioned to be appointed conservators for the children and asked court approval of a settlement of the children's wrongful death claims with "CIGNA Property and Casualty Companies, the insurer of Weston's Lamplighter Motels, Inc. dba Page Boy Motel, and its employees." The proposed structured settlement had a then-present value of approximately $21,000 per child. Appellant opposed the petition, claiming he had priority to be conservator and that the settlement amount was inadequate. The Hayeses and Ms. Sanders filed a response asserting that the settlement was in the best interest of the children, but inviting the court, if concerned over the issue, to appoint an attorney for the children to make sure that their interests were protected. In a separate response, Weston's argued that the settlement was adequate to resolve a case in which the negligence claim against Weston's was weak, decedent's contributory negligence was great, and the children's damages were small. After conducting a hearing, the trial court entered an order on July 19, 1989, appointing the Hayeses and Ms. Sanders conservators of the children's estates, approving the settlement agreement, and releasing "WESTON's LAMPLIGHTER MOTEL, INC., dba PAGE BOY MOTEL and others from all claims arising out of the death of Hazel Woodty." Appellant did not appeal from that order.[1]

In 1990, Weston's filed the petition that is the subject of this appeal, asking the trial court to reform the releases to include Carrier Corporation, the manufacturer of the air conditioner/heating unit installed in the motel. CIGNA, the insurer for Weston's, is also the insurer for Carrier Corporation. The trial court granted reformation, ultimately reducing its ruling to an order dated March 18, 1991. Appellant objected to reformation in the trial court and now brings this appeal.

## STANDING

In its answering brief, Weston's argues that appellant is not a party and lacks standing to object to the trial court's approval and reformation of the releases. Weston's ignores Ariz.Rev.Stat.Ann. ("A.R.S.") section 14–5405(A) (1975 & West Supp.1992), which requires statutory notice to appellant, as a parent, of the conservatorship proceedings. Moreover, because Weston's did not question appellant's standing in the trial court, it may not do so on appeal. *See, e.g., Sahf v. Lake Havasu City Ass'n for the Retarded and Handi-*

---

1. Although appellant now frames the question "[w]hether the conservator of a minor's estate has the authority to settle a minor's portion of a wrongful death claim," that issue is not properly part of this appeal. The trial court decided, in a final order entered on July 19, 1989, that the conservators had authority to settle the children's claims. Appellant did not appeal that order and may not revive the issue now.

*capped,* 150 Ariz. 50, 53, 721 P.2d 1177, 1180 (App.1986); *Richter v. Dairy Queen, Inc.,* 131 Ariz. 595, 596, 643 P.2d 508, 509 (App.1982).

## REFORMATION OF THE RELEASES

Appellant argues on two grounds that the trial court erred in reforming the releases to include Carrier Corporation, the air conditioner/heater manufacturer. First, appellant argues that Weston's failed to prove the parties intended to include Carrier in the original settlement and releases. Second, he points out that Weston's never made a showing that the settlement of $21,000 per child, even if reasonable as to Weston's, was also reasonable as to Carrier. Because we reverse on the second ground, we need not decide the first.

When Weston's and its insurer, CIGNA, joined in the conservators' request for judicial approval of the settlement agreement, they did so for their own protection, so that the children could not later, upon reaching majority, repudiate a settlement that others had reached on their behalf. *See, e.g., Gomez v. Maricopa County,* 175 Ariz. 469, 471–472, 857 P.2d 1323, 1325–26 (1993); *In re Estate of Milliman,* 101 Ariz. 54, 64, 415 P.2d 877, 887 (1966); *Pacheco v. Delgardo,* 46 Ariz. 401, 406, 52 P.2d 479, 481 (1935).[2] To secure the court's approval, Weston's attempted to persuade the court that the settlement was fair and reasonable, given the nature of the children's claim. Weston's arguments, however, concerned only the relinquishment of a personal injury claim against the motel. Nothing was said concerning the relinquishment of a product claim against Carrier, the air conditioner/heater manufacturer.

When Weston's returned to the trial court, seeking by reformation to include Carrier within the original release, it did not expressly allege that the initial settlement was intended by all signatories to include Carrier, another CIGNA insured. Rather, it alleged more generally that Weston's, CIGNA, and the children's conserva-

tors and attorneys had intended the releases to include "all entities that may have been responsible for the death" of Hazel Woodty, but that, due to a drafting error, the releases had not clearly expressed this intent. The conservators did not respond, and we will assume for the purpose of disposition that the releases were, as alleged, more narrowly drafted than the settlement participants had intended. The question remains whether those seeking the court's approval gave it any basis to conclude that the settlement amount was adequate not only to release Weston's but to release Carrier as well.

Weston's acknowledged in its brief that it made no supplemental evidentiary presentation at the reformation hearing to establish the fairness of including Carrier within the initial settlement and release. Weston's argued, however, that no such showing was required because the attorneys for the conservators did not object to reformation and because "the court had already passed on evidence of the fairness" at the initial hearing. At oral argument, Weston's lawyer added that, if we were to read the transcript of the original hearing broadly, we would discover the following essential representations to the court: 1) that all potential claims had been investigated; 2) that the only even minimally viable claim was against the motel; and 3) that under the circumstances, given the weakness of that claim and the general weakness of the children's damage claims, the settlement was a fair basis for concluding *all* of the children's claims.

We do not find that this accurately summarizes the presentation to the trial court. Rather, when we examine the pleadings and presentations at the initial hearing, we find only that the court passed on the fairness of a settlement with Weston's and its employees and did not consider a settlement with Carrier or any other nonparty at fault. It is true that both Weston's attorney and the conservator's attorneys commented at the hearing that the children's

**2.** The court takes judicial notice that insurers commonly require, as a condition of settling a

minor's claim, that the settlement be judicially approved.

damage claim was weak, as the children had not lived with their mother for several years. But though this argument would apply to claims against others than Weston's, neither Weston's nor the conservators ever referred to others who might be at fault, or whose liability might be extinguished by the settlement. The conservators' attorneys did not discuss liability at all in the transcribed portion of the hearing.[3] And Weston's referred, both in pleadings and at the hearing, only to the weakness of the liability claim against Weston's and its employees. In its memorandum to the trial court, Weston's stated:

> Specifically, at trial *this Defendant* will offer evidence that it had *no notice* of any prior problem with the air conditioning/heating unit that burst into flames on the morning in question; that the deceased was a trespasser which imposed no duty on *this Defendant* to search out and find the problem with the air conditioning/heating unit; and because other persons in the motel room had control over the air conditioning/heating unit that the doctrine of *Res Ipsa Loquitur* does not apply. Therefore, *this Defendant* has good facts and law for a finding of no liability and the Plaintiffs have significant proof problems on the issue of liability.

(Emphasis added). Weston's comments on liability at the hearing were similarly limited in scope. None of this discussion bore in any way on the strength or weakness of a potential product liability claim against the heating unit manufacturer. To the contrary, it created the impression that the settlement was with Weston's and its employees alone.

In fact, only *appellant's* lawyer mentioned a potential product liability claim at

the hearing. He stated that in his independent lawsuit, he was hoping "to force the motel to come up with an expert opinion to prove that the air conditioner heating unit that was the origin of the fire was a defective product." Weston's, however, did not respond to this comment. Nor did it suggest to the court that the proposed settlement would preclude the children from bringing or participating in such a claim. Nor did it disclose to the court that the potential target of such a claim was another CIGNA insured and, indeed, that CIGNA had internally structured the settlement to include a contribution on Carrier's behalf.[4] Nor did it comment on the strength or weakness of any evidence that the air conditioner/heater was defective. All of this information should have been disclosed if Weston's or CIGNA indeed wished the court to approve a settlement that would extinguish Carrier Corporation's liability to the children.

Weston's points out that the trial court's original order permitted the conservators to release "WESTON'S LAMPLIGHTER MOTEL, INC., dba PAGE BOY MOTEL *and others* from all claims arising out of the death of Hazel Woodty." (Emphasis added). The record does not suggest, however, that the words "and others" were intended to include the heater manufacturer or any other non-party at fault. Originally, the children's conservators petitioned the superior court to approve their settlement and releases with "CIGNA Property and Casualty Companies, the insurer of Weston's Lamplighter Motels, Inc. dba Page Boy Motel, *and its employees.*" (Emphasis added). When appellant objected, he argued that the settlement was "woefully inadequate" against Weston's, and none of the counter-presentations to

---

**3.** One of the conservator's lawyers asked and was given the opportunity to present additional information in support of the settlement outside the presence of Weston's lawyer, referring to "some inherent weaknesses in the case that I don't technically want the defense lawyer to know." Though these comments were not transcribed, it is contextually apparent that the conservator's lawyer sought to address weaknesses that would justify a settlement with Weston's. There would have been no reason to exclude

Weston's lawyer from a discussion of particularized weaknesses in a claim against Carrier or any other nonparty at fault.

**4.** An exhibit to one of appellant's trial court pleadings in the trial court reformation proceedings is an internal CIGNA document referring to an agreement reached in March of 1989 that a contribution to the settlement would be made on behalf of Carrier.

the trial court ever enlarged that focus. The predrafted releases discharged "WESTON'S LAMPLIGHTER MOTELS, INC., d/b/a PAGE BOY MOTEL, CIGNA PROPERTY & CASUALTY COMPANIES, their heirs, executors, administrators, insurers, indemnitors, sureties and assigns, including employees, representatives and agents...." The court's reference to "and others," when taken in appropriate context, referred to this limited constellation—that is, Weston's employees, insurers, indemnitors, et al.

### CONCLUSION

In the reformation proceedings, Weston's focused only on the question of the intent of the settling parties; it neglected to demonstrate whether the settlement was not only reasonable to discharge the negligence claim against Weston's, but reasonable to discharge a product liability claim against the Carrier Corporation as well. We have examined and rejected Weston's argument that such a showing was made at the initial hearing. To the contrary, we conclude that the initial hearing covered only the adequacy of the settlement to resolve a claim against Weston's itself. Because the trial court has therefore never passed on the reasonableness of the settlement to discharge the claim against Carrier Corporation, we set aside the reformation order and remand for proceedings consistent with this decision.

GRANT and GERBER, JJ., concur.